**Glenn WEST**

v.

**COMMONWEALTH of Kentucky.**

No. 2001–CA–002779–MR.

Court of Appeals of Kentucky.

April 30, 2004.

Discretionary Review Denied by Supreme Court May 11, 2005.

Emily Holt, Frankfort, for appellant.

Albert B. Chandler, III, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, for appellee.

Before JOHNSON, KNOPF, and McANULTY, Judges.

## OPINION

McANULTY, Judge.

Glenn West (hereinafter appellant) appeals his conviction in the Calloway Circuit Court for one count of criminal mischief in the first degree, one count of criminal mischief in the second degree, seven counts of wanton endangerment, one count of possession of marijuana and one count of carrying a concealed deadly weapon. On appeal, he argues that the trial court erred in failing to conduct a competency hearing as required by Kentucky Revised Statutes (KRS) 504.100; that the testimony of a jailhouse informant should have been excluded; that he should have been charged with no more than three counts of wanton endangerment; and finally, that excessive security surrounding him at trial violated his constitutional rights. We have reviewed these allegations, and we affirm.

The charges in this case arose after the residences of Donald Crawford and Glen Crawford were shot at from a vehicle by an unknown assailant. On September 10, 1997, at about 9:30 p.m., Margaret and Donald Crawford were at home when someone shot at their house. Neither was injured. A neighbor observed a vehicle's taillights pass slowly by the Crawford house at the time he heard the gunshots. The next night, September 11, 1997, at about 8:00 p.m., Donald and Margaret Crawford were in their living room when they heard what sounded like "machine gun fire" and numerous bullets entered their home. They dropped to the floor and avoided injury. A neighbor observed a dark car with one headlight out parked in front of the Crawford residence which drove off quickly. Also on September 11, someone shot at the residence of Glen Crawford, Donald's brother. Glen Crawford, his daughter Cathy, and granddaughter were in the residence at the time. Cathy Crawford ran outside and observed a dark vehicle drive slowly away.

While investigating the shooting at the Glen Crawford house on September 11, 1997, a law enforcement officer observed an "Explorer-type" vehicle with a headlight out drive past the house. Officers saw a dark green "Bronco-like" vehicle with one headlight drive by the Donald Crawford house twice while they were collecting shell casings from the road. Appellant owned a 1994 Explorer on September 10 and 11. He traded it at Parker Ford for a newer model on September 11. On September 15, one of the owners of

Parker Ford allowed a search of the vehicle. Eleven 9mm shell casings were recovered from inside the vehicle, which had a front headlight out.

During a search of appellant's home pursuant to a search warrant, officers recovered a Norinco 9mm semi-automatic pistol, a Browning 380 semi-automatic pistol, 9mm fired shell casings and a box of 9mm ammunition. The Kentucky State Police crime lab determined that 9mm shell casings found on the highway in front of Donald Crawford's house on September 11, 1997, came from the Norinco semi-automatic pistol found in appellant's home. Two bullet fragments recovered from the residence also matched the Norinco. A 380 shell casing found on the highway in front of the Donald Crawford residence on September 11, 1997, was fired from the Browning 380 semi-automatic pistol found in appellant's residence. Two 9mm shell casings found on September 11, 1997, on the highway in front of the Glen Crawford residence were fired from the Norinco semi-automatic found in appellant's residence.

██ On appeal, appellant first argues that the trial court erred in failing to conduct a hearing, as required by KRS 504.100(3), on his competency to stand trial. The competency hearing referenced in KRS 504.100(3) is mandatory and cannot be waived by a defendant. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 486 (1999), cert. denied, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000). Appellant's trial took place before the Court in *Mills* stated that the hearing is mandatory. When such a hearing is held it must be an evidentiary hearing allowing the defendant to cross-examine witnesses, including the psychiatrist or psychologist. *Gabbard v. Commonwealth*, Ky., 887 S.W.2d 547, 551 (1994).

██ Appellant acknowledges that this error is not preserved. He argues that because the statute mandates a hearing, this is an issue which cannot be waived and constitutes a palpable error pursuant to RCr 10.26. We agree that appellant has identified an issue which may be reviewed on appeal. In reviewing a trial court's failure to hold a competency hearing, the standard is "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Mills*, 996 S.W.2d at 486, *quoting Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir.1983). If the reasonable judge would not have experienced doubt, the lack of a hearing may be considered harmless error. *Id.*

In *Thompson v. Commonwealth*, Ky., 56 S.W.3d 406, 407–408 (2001), the trial court ordered a defendant evaluated to determine his competency to stand trial, but the court did not hold a competency hearing following the mental evaluation. On review, the Kentucky Supreme Court held that "the trial court's own order establishes the sufficiency of the trial judge's level of doubt as to Thompson's competence to plead guilty." *Id.* at 408. That order stated that the court had been informed of issues of mental illnesses and neurological problems which might affect the defendant's ability to perceive and interpret information provided by counsel. Because of the concerns expressed by the judge, the trial court's failure to hold the mandatory hearing pursuant to KRS 504.100(3) violated the defendant's due process rights. *Id.*

In *Mills*, however, the Kentucky Supreme Court concluded that a trial court's failure to hold a hearing was harmless error. The defendant had given notice of his intention to introduce evidence con-

cerning mental illness, insanity, or a mental defect. *Mills,* 996 S.W.2d at 485. The trial court ordered a psychiatric evaluation to address the issues of his competence to stand trial and his sanity. *Id.* at 485–86. The psychiatrist reported that the defendant was competent and able to assist in his defense. Thereafter, defense counsel informed the court that Mills waived the competency hearing. *Id.* at 486. The Supreme Court, on appeal, held that the defendant could not waive a competency hearing, but under the standard for failure to conduct an evidentiary hearing there was nothing to cause a reasonable doubt as to Mills' competence to stand trial. The Supreme Court determined the trial court only ordered the examination "out of expediency in response to Mills' notice." With no factual basis for the trial judge to reasonably doubt the defendant's competence, the failure to hold a hearing was harmless error. *Id.*

In the case at bar, defense counsel asserted in his motion that appellant did not exhibit the capacity to comprehend the nature and consequences of the proceedings against him and did not appear to either want or be able to participate in his defense. Counsel cited the following reasons for the motion: the bizarre nature of the offense; family members' revelation that there were mental or chemical disorders within three generations of the family; and appellant's denial "in totality" of any mental condition or substance abuse.

The trial court ordered a mental evaluation as to both appellant's competence to stand trial and his mental condition at the time of the offense. The judge did not include any facts in support of the order. The evaluating psychologist found that appellant understood the charges against him, had the ability to understand the significance of a plea of guilty or not guilty, and was competent to participate rationally in his own defense. Although appellant's counsel asked for a second evaluation, this was based on his belief that a more comprehensive examination could be conducted at the Kentucky Correctional Psychiatric Center, and not on any new or different behaviors or information pertaining to appellant's mental condition.

We believe the case at bar bears more similarity to *Mills* than *Thompson* in the facts surrounding the issue of competency. It appears that the court's order was only in response to appellant's motion for a determination of his competence to stand trial. Appellant's motion, in turn, was based more on conjecture than on any clear facts. Appellant points to no additional facts, such as his behavior or other information external to the proceedings, which would cause a reasonable judge to doubt appellant's competence. Therefore, we conclude that the failure to hold a hearing in this case was harmless error.

Appellant's second assignment of error is that the trial court should not have permitted the jailhouse informant, Jeffrey Bray, to testify. Appellant identifies problems with jailhouse informants generally and with this one in particular: Bray was serving sentences for crimes involving dishonesty (possession of a forged instrument and theft by deception); Bray admitted that he had read the legal documents sent to appellant by his attorney, affording him background knowledge about the case; and Bray had testified against at least one other criminal defendant. Appellant argued at trial that the evidence should have been excluded under KRE 403 because it was more prejudicial than probative, and cross-examination of the informant would not be sufficient to overcome the prejudice. Appellant also argued that the witness was not competent to testify under KRE 601(4) because he lacked the capacity to under-

stand the obligation of a witness to tell the truth.

Bray testified that appellant told him in jail he was mad and did some shooting at a residence with a semi-automatic weapon. He said appellant told him there was a little girl there. The Commonwealth argues that the evidence was properly allowed, and that it was not crucial since a firearms expert testified that the shell casings and bullets found outside the homes of Glen and of Donald Crawford came from appellant's 9mm Norinco pistol. However, we believe that the evidence offered by the informant had significance since appellant's defense was that the guns must have been taken from his home or vehicle before being fired at the Crawford residences. The informant's evidence helped to tie appellant to the crimes and undercut his defense that his guns were stolen and used by someone else.

Appellant argues on appeal that the courts of this Commonwealth should enforce stricter limitations on the use of government informers because their testimonial assistance is inherently unreliable. He urges the courts of the Commonwealth to adopt specific guidelines, such as in the Oklahoma case of *Dodd v. State*, 993 P.2d 778, 784 (Okla.Crim.App.2000). The *Dodd* court warned: "Courts should be exceedingly leery of jailhouse informants, especially if there is a hint that the informant received some sort of a benefit for his or her testimony." *Id.* at 783. *Dodd* provided for increased disclosure in discovery so that defense counsel could more knowledgeably cross-examine informants, and for an instruction to the jury informing them of the "greater care" required when assessing the testimony of an informant. *Id.* at 784.

We find no authority for such an approach in Kentucky. Similar issues have been raised and rejected as policy in our courts. In *Parrish v. Commonwealth*, Ky., 121 S.W.3d 198, 203 (2003), the defendant argued that the testimony of a jailhouse informant should have been excluded because it was inherently suspect, and its reliability should have been the subject of a cautionary admonition. The Kentucky Supreme Court rejected this argument, stating that the rule is that "the credibility of witnesses and the weight to be given sworn testimony are matters for the jury to decide." *Id.* The Court observed that the informant was cross-examined by the defense. *Id.* In a capital case, the Supreme Court found no authority for the proposition that the trial court must instruct on a jailhouse informant's benefit from testifying. *Stopher v. Commonwealth*, Ky., 57 S.W.3d 787, 804 (2001). We conclude that the trial court was not required to give greater scrutiny to the jailhouse informant's testimony. We affirm the trial court's decision that the probative value of the evidence was not substantially outweighed by the dangers of undue prejudice.

■ Appellant next argues that the trial court erred when it instructed the jury as to seven counts of wanton endangerment rather than three counts. Appellant was charged with seven counts of wanton endangerment on the basis that there were seven people in total in the houses when shots were fired. Appellant contends he should only have been charged with three counts for each of the three occurrences of shooting. We disagree.

Under KRS 508.060, a person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person. Appellant cites Justice Leibson's dissent in *Alexander v. Commonwealth*,

Ky., 766 S.W.2d 631 (1988), in which Justice Leibson contended that a "single act of wanton endangerment may endanger one or many, but it is only one offense" under the Penal Code. Justice Leibson argued that the statute was designed to prohibit the conduct which endangered another, but fortuitously did not cause actual harm, and so constituted a single punishable act. Appellant believes the words of the statute support his claim that the act creates the offense, not the number of people affected by the act.

█ When considering whether multiple offenses and punishments for a single transaction are valid, the controlling factor is legislative intent. *Hennemeyer v. Commonwealth,* Ky., 580 S.W.2d 211 (1979); *see also* KRS 505.020(1)(c). In *Hennemeyer,* the Kentucky Supreme Court examined the legislative intent behind the enactment of the wanton endangerment statute to determine whether it was to punish a particular act or a continuous course of conduct. *Id.* at 214–215. In *Hennemeyer,* the defendant was charged with six counts of wanton endangerment for firing six shots at a group of policemen. The Court held that the wanton endangerment statute was not designed to punish a continuous course of conduct, and that each of the six shots constituted a separate offense. *Id.* at 215.

The case left open the question raised in the case at bar—whether a defendant may be charged with wanton endangerment for each *person* endangered. We believe the Supreme Court's elucidation of legislative intent in *Hennemeyer* supports charging for wanton endangerment according to the number of persons imperiled:

Did the General Assembly, by the enactment of KRS 508.060, intend to punish a particular act or did it intend to punish a continuous course of conduct? We have no difficulty in arriving at the conclusion that it was designed *to protect each and every person from each act coming within the definition of the statute.* It is not a statute designed to punish a continuous course of conduct.

*Id.* (Emphasis added).

Appellant fails to convince us that *Hennemeyer* was not decided correctly. Accordingly, we conclude that the shootings which endangered seven persons in total could be charged as seven separate offenses of wanton endangerment.

█ Finally, appellant contends that he was denied a fair trial by having to wear handcuffs in the courtroom and being closely guarded by deputy sheriffs during the trial. The Commonwealth argues that this issue is unpreserved for review on appeal under RCr 9.22. Appellant did not raise at trial the issues of how he was guarded or handcuffed. Not until his motion for new trial did he assert this issue as error. At trial, defense counsel had argued that appellant was denied due process, equal protection of law and effective assistance of counsel due to failings of the new courthouse facilities to afford him effective opportunities to speak with his client and witnesses, and to avoid encounters with jurors. Appellant moved for a mistrial, which the trial court denied.

█ The premise for the principle that issues not presented to the trial court are unpreserved for appellate review is that the trial court should be afforded a reasonable opportunity to rule upon alleged errors that could have been corrected at trial. *Manns v. Commonwealth,* Ky., 80 S.W.3d 439, 440 (2002). Appellant's failure to raise the issue at trial he cites on appeal means that the trial court had no opportunity to adopt any changes, to question jurors as to what they had observed or to give a curative admonition if the situation called for it. Objection to

alleged improprieties that occurred during the trial cannot be made after the jury verdict. *Patrick v. Commonwealth*, Ky., 436 S.W.2d 69, 74 (1968). We agree with the Commonwealth that appellant failed to preserve this alleged error for appellate review by contemporaneous objection.

For the foregoing reasons, we affirm the judgment of the Calloway Circuit Court.

ALL CONCUR.