Steven PAULLEY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

and

Henny L. Gunn (a/k/a Henry
L. Gunn), Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 2009–SC–000024–MR,
2009–SC–000033–MR.

Supreme Court of Kentucky.

Oct. 21, 2010.

Emily Holt Rhorer, Department of Public Advocacy, Roy Alyette Durham, II, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellants.

Jack Conway, Attorney General of Kentucky, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

Rocky Brown was shot and killed while attempting to hold the door to prevent a forced entry into Adolphus Stone's home. A circuit court jury convicted Henny Gunn (a/k/a Henry Gunn) and Steven Paulley of, among other offenses, murdering Brown. Both Gunn and Paulley separately appealed to this Court as a matter of right.[1] Because the operative facts and many of the issues are the same for both appeals, we have elected to resolve both appeals in this combined opinion. Because the trial court improperly failed to grant a request to strike a juror for cause, we must vacate Paulley's and Gunn's convictions and remand these cases to the trial court for further proceedings consistent with this opinion.

## II. FACTUAL AND PROCEDURAL HISTORY.

Nine people, including three children, were present at the home Stone shared with his girlfriend. Someone knocked on the door and identified himself as B.J. The knocking became pounding and kicking, and Brown put his weight against the door to hold it closed. A shot fired through the door struck and fatally wounded Brown, who had leaned his back and shoulder against the door. When the police arrived, they could not get in through the front door because Brown was still holding the doorknob.

In the course of their investigation, the police learned of Stone's ongoing feud with Eric Ward. Eventually, Ward, Paulley, Gunn, and Eric Taylor were charged in relation to Brown's death. Two weeks before trial, Ward and Taylor agreed to

---

1. Ky. Const. § 110(2)(b).

testify for the Commonwealth. Ward pleaded guilty to complicity-based charges surrounding Brown's death and agreed with the Commonwealth on a sentence of four years' imprisonment for those charges. Taylor entered into an agreement with the Commonwealth in which he waived his 5th Amendment right to refuse to testify in exchange for a reduction in the severity of his charges. Nonetheless, Taylor was permitted to sit at the defense table during Gunn and Paulley's joint trial. The jury acquitted Taylor of all charges; Gunn and Paulley were convicted of all charges. Ultimately, in accordance with the jury's verdicts and recommendations, the trial court sentenced Gunn to life imprisonment and sentenced Paulley to twenty years' imprisonment.[2]

## III. ANALYSIS.

Both Gunn and Paulley raise numerous, often-overlapping issues. We will discuss the failure to strike a juror for cause issue first because it is dispositive. We will then briefly discuss only those issues that are potentially dispositive or are necessary for guidance upon remand.[3]

### A. Failure to Strike Juror for Cause.

■ During voir dire, prospective juror # 220248 stated that she was a civilian who previously had served as a training instructor for the Indianapolis Police Department. She also stated that she had many relatives in law enforcement, none of whom lived in Kentucky. She disclaimed any bias because she did not know any of the officers involved in these cases.

Later on in voir dire, prospective juror # 220248 stated that she had been a burglary victim several times, both as a child and as an adult. Nonetheless, she insisted that she could be fair and impartial in these burglary and murder cases.

Finally in voir dire, prospective juror # 220248 stated that her son had been the victim of a robbery involving a firearm. When asked, the prospective juror admitted that she was not sure she could listen to the evidence and not allow her previous experience to cloud her ability to consider these cases. Defense counsel asked if the prospective juror's prior experience would interfere with her ability to be fair and impartial, to which the woman responded that she was not sure.

Over the Commonwealth's objection, defense counsel later moved to strike prospective juror # 220248 for cause. The trial court said it would have liked to question this prospective juror further but denied the motion to strike for cause because the court believed the juror had not expressed anything that could prevent her from serving as a juror. Defense counsel then was forced to use a peremptory strike to remove prospective juror # 220248.

■ Kentucky Rules of Criminal Procedure (RCr) 9.36(1) provides a juror should be struck for cause "[w]hen there is reasonable ground to believe that ... juror cannot render a fair and impartial

---

2. After the jury recommended a twenty-year sentence for Paulley on the murder conviction, Paulley and the Commonwealth agreed to sentences on the other convictions, all of which were to be served concurrently with the murder conviction, for a total sentence of twenty years' imprisonment. Similarly, after the jury recommended a sentence of life imprisonment for Gunn on the murder conviction, Gunn and the Commonwealth agreed to sentences on the remaining convictions, all of which were to be served concurrently with the life imprisonment sentence, for a total sentence of life imprisonment.

3. We have carefully considered the briefs and are aware of the plethora of issues contained in them. Any issue not specifically discussed in this opinion is deemed to be moot, without merit, or unlikely to recur on remand.

verdict on the evidence. . . ." A trial court generally is given "broad discretion to determine whether a prospective juror should be excused for cause. . . ." [4] Nonetheless, "that discretion does not mean a trial judge's decision not to strike a juror for cause is beyond review by an appellate court." [5] Ordinarily, an erroneous, discretion-abusing failure to grant a motion to strike for cause results in reversible error. [6] But we have recently made clear our requirement that "in order to complain on appeal that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." [7]

Gunn and Paulley admit neither identified any additional jurors he would have struck if he had not been forced to use a peremptory strike on juror # 220248. The Commonwealth argues that such a failure is fatal to Gunn's and Paulley's claims. We disagree.

Gunn and Paulley's joint trial occurred in September 2008. We did not make definite our requirement that defendants set forth the names of other jurors they would have struck until October 2009— over a year after Gunn and Paulley's trials. [8] It would be unfair for us to hold Gunn and Paulley to a standard that did not exist at the time of their trials. Gunn and Paulley timely made their objection for cause to prospective juror # 220248. [9] Under the state of the law at the time, nothing more was required. So we shall deem this issue to be properly preserved. For all cases tried after finality of our decision in *Gabbard,* however, we reaffirm that "in order to complain on appeal that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." [10]

 Having dealt with the procedural aspects of this issue, we may now analyze it on the merits. A properly qualified juror must be impartial, which former United States Supreme Court Chief Justice Charles Evans Hughes described as

---

**4.** *Mabe v. Commonwealth,* 884 S.W.2d 668, 670 (Ky.1994).

**5.** *Gabbard v. Commonwealth,* 297 S.W.3d 844, 853 (Ky.2009).

**6.** *Id.* at 854 ("The question then is whether the trial court's erroneous failure to grant the for-cause strike is a reversible error. This Court has ruled that ordinarily, such an error affects a substantial right of a defendant and is presumed to be prejudicial.").

**7.** *Id.*

**8.** *Gabbard* was rendered on October 29, 2009. *See id.* at 844.

**9.** The Commonwealth contends this issue is preserved only as to Paulley. The Commonwealth cites to three portions of the video record where Gunn's counsel purportedly stated he had no strikes for cause. But one of those three citations merely contains a fleeting recitation that the defense, which was allowed to collaborate on peremptory challenges, used a peremptory challenge on juror # 220248. The other two citations do relate to the motion to strike that juror for cause. But the objection for cause was made at an en masse bench conference during which the attorneys did not face the camera and during which there is an ongoing loud and unrelated background conversation, so it is sometimes difficult to discern with certainty what is being said and by whom. So we deem this issue preserved.

**10.** *Gabbard,* 297 S.W.3d at 854. Both the Commonwealth and the defendants agree, for whatever reasons, the jury strike sheets are not in the record before us. So we could not, in this case, strictly apply our holding in *Gabbard* regarding denominating which other juror(s) a defendant would have exercised a peremptory challenge upon, even if we desired to do so.

comprising a "mental attitude of appropriate indifference ..."[11] In order to determine if a juror has the appropriate degree of impartiality, "[t]he test is whether, after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict."[12] Any doubts about the ability of a juror to be fair and impartial should be construed in favor of a defendant.[13]

The fact that prospective juror # 220248 had personal and familial ties to law enforcement does not automatically disqualify her from sitting as a juror on the case.[14] Similarly, the fact that prospective juror # 220248 had been the victim of a similar crime did not automatically disqualify her from jury service.[15] So had those been the only allegedly disqualifying remarks made by prospective juror # 220248, we would have routinely affirmed the trial court's decision to refuse to strike her for cause.

But far more troubling is the fact that prospective juror # 220248 was unable to disclaim any bias stemming from being the mother of a crime victim. In fact, she stated she might not be able to put out of her mind the fact that her son was a victim of an armed robbery. When asked directly whether she could be fair and impartial, the juror stated she was not sure. The juror's hesitancy is highlighted all the more because it stands in marked contrast to her quick disclaimer of any bias stemming from her law enforcement ties and experience.

Unfortunately, this issue was not deeply explored by follow-up questions. The last word on this crucial subject was the juror's honest-seeming expression of doubt about her ability to be fair and impartial. From this scant record, the Commonwealth asks us to assume a lack of bias while Gunn and Paulley ask us to assume bias. As stated previously, however, we must afford a criminal defendant the benefit of the doubt as it pertains to a juror's ability to be impartial. After all, perhaps nothing strikes more at the heart of having a fundamentally fair trial than does the seating of an appropriately impartial jury. Yet, to rule in favor of the Commonwealth, we would be required to find impartial a juror who refused to so categorize herself. In other words, taking into account all the facts and circumstances, there is nothing

**11.** *United States v. Wood,* 299 U.S. 123, 145–46, 57 S.Ct. 177, 81 L.Ed. 78 (1936) ("Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.").

**12.** *Mabe,* 884 S.W.2d at 671.

**13.** *Fugate v. Commonwealth,* 993 S.W.2d 931, 939 (Ky.1999) ("Composition of the jury is always vital to the defendant in a criminal prosecution and doubt about unfairness is to be resolved in his favor."); *Calvert v. Commonwealth,* 708 S.W.2d 121, 123 (Ky.App. 1986) ("While we recognize the difficulty in empaneling a totally unbiased jury, especially in a case such as this, in a criminal case, the trial court should resolve all doubts as to the competency of the juror in favor of the defendant.").

**14.** *See Stopher v. Commonwealth,* 57 S.W.3d 787, 797 (Ky.2001) (finding no error in failure to strike for cause juror whose father was police officer when juror "noted that he did not have any preference for police officers and that his family connection to the law enforcement profession would in no manner affect his ability to decide the case based on the evidence presented."); *Bowling v. Commonwealth,* 942 S.W.2d 293, 299 (Ky.1997) ("Being a law enforcement officer is insufficient to excuse for cause from jury service.").

**15.** *Bowling,* 942 S.W.2d at 299 ("the mere fact that a person has been the victim of a similar crime is insufficient to mandate a prospective juror be excused for cause.").

in the record from which we could definitively conclude this juror was truly impartial.

In the absence of anything concrete to show this juror could have set aside the feelings she held as the mother of a crime victim, we are forced to conclude "there is reasonable ground to believe that ... juror [# 220248] cannot render a fair and impartial verdict on the evidence, ..."[16]

The trial court's erroneous failure to grant the motion to strike prospective juror # 220248 for cause "deprived the defendant[s] of a substantial right" and, ultimately, led Gunn and Paulley to "not get the trial [they were] entitled to get."[17] So the error necessitates vacating Gunn's and Paulley's convictions. We shall next only briefly discuss matters that have a possibility of recurring on remand or would be dispositive as to at least one charge against Gunn and/or Paulley.

**B. No Entitlement to Directed Verdict.**

Both Gunn and Paulley contend they were entitled to directed verdicts.[18] We disagree.

*1. Standard of Review.*

▬▬▬ The familiar standard for ruling on a motion for directed verdict is as follows:

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[19]

*2. Burglary.*

▬▬▬ Both Gunn and Paulley contend they were entitled to directed verdicts because there was no evidence that either entered Stone's home. The evidence showed that, at most, the front door of Stone's residence opened slightly when it was kicked by Gunn. So Gunn's foot could have crossed the threshold when the door was ajar. The question of whether entry as slight as this is sufficient to support a burglary charge has rarely been addressed by this Court, especially since the adoption of the Kentucky Penal Code in 1974.

As it pertains to this case, a person is guilty of burglary in the first degree if he "with the intent to commit a crime ...

---

**16.** RCr 9.36(1).

**17.** *Shane v. Commonwealth,* 243 S.W.3d 336, 341 (Ky.2008). *See also id.* at 343 ("Not removing a biased juror from the venire, and thereby forcing a defendant to forfeit a peremptory strike, makes the defendant take on the duty of the court and prevents him from getting the jury he had a right to choose. This violates a substantial right accorded great weight in our legal history, and can never be harmless error.").

**18.** Though he mentions in passing that he was entitled to a directed verdict as to the robbery charge, *Gunn offers no substantive argument* specifically pertaining to that charge (nor does Paulley). So we will not discuss whether either Appellant was entitled to a directed verdict on the robbery charges.

**19.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime ... [i]s armed with explosives or a deadly weapon...."[20] The question raised by Gunn and Paulley is whether a slight entry—here, a foot crossing the threshold of a residence when a door is kicked slightly ajar—constitutes a sufficient entry. We hold that it does.

Other courts have concluded that even a slight entry is sufficient.[21] For example, the Supreme Court of Tennessee has held that "[e]ntry is an indispensable element in the crime of burglary[;] but, to prove entry, it is not necessary to show that the defendant's whole body made an entrance into the house."[22] Instead, as our counterpart in Maine has held, "[a] burglarious entry is accomplished by the intrusion into the building of any part of the body, an arm, a hand, a finger[,] or a foot...."[23]

Although not cited by the parties, our precedent is in general accord with this "slight entry" rule. At the beginning of the last century, our predecessor Court had to decide whether loosening a window strip—but not actually opening the window—was a sufficient "breaking" to constitute breaking into a warehouse.[24] The Court ultimately concluded that no breaking occurred since there was no actual entry into the warehouse.[25] In the course of coming to that conclusion, the Court cited, with approval, various treatises and scholarly works that generally agreed that "[a]n actual breaking may be by ... removing or breaking a pane of glass, and inserting the hand, or even a finger...."[26] In a similar case, which is also over one hundred years old, our predecessor Court held that a defendant could not be guilty of breaking into a railroad car without actually entering the car.[27] In the course of arriving at that conclusion, the Court opined that "an entry into the car, however slight, such as putting the hand through the opening with the intent to steal property, etc., therefrom, would be an entry in the meaning of the statute...."[28]

After the adoption of the Penal Code, we have, apparently, only had one occasion to address the continued viability of the slight entry rule; and that occasion occurred thirty years ago. In *Stamps v. Commonwealth*, a defendant was convicted of third-degree burglary based upon his having penetrated into the "air pockets of the concrete blocks" at the rear of a store without having "penetrate[ed] into the store" itself.[29] We cited *Price* and *Gaddie* for the general proposition that a slight entry was sufficient but held that the defendant in *Stamps* was not guilty of burglary because he had penetrated only the air pockets in the exterior concrete blocks

**20.** Kentucky Revised Statutes (KRS) 511.020(1)(a).

**21.** *People v. Walters*, 249 Cal.App.2d 547, 57 Cal.Rptr. 484, 486 (1967) ("The slightest entry is sufficient to constitute the crime of burglary, if it be with felonious intent.").

**22.** *State v. Crow*, 517 S.W.2d 753, 753 (Tenn. 1974).

**23.** *State v. Liberty*, 280 A.2d 805, 808 (Me. 1971).

**24.** *Gaddie v. Commonwealth*, 117 Ky. 468, 78 S.W. 162 (1904).

**25.** *Id.* at 473, 78 S.W. at 164.

**26.** *Id.* at 461–72, 78 S.W. at 163.

**27.** *Price v. Commonwealth*, 129 Ky. 716, 112 S.W. 855 (1908).

**28.** *Id.* at 718, 112 S.W. at 855.

**29.** *Stamps v. Commonwealth*, 602 S.W.2d 172, 172 (Ky.1980).

and not penetrated the interior of the building.[30]

So, consistent with precedent and with the viewpoint of other courts, we reaffirm that even a slight entry is sufficient to support a charge of burglary, assuming, of course, the evidence supports all the other requisite elements of a burglary offense, none of which are at issue in these appeals.[31]

Drawing all reasonable inferences in favor of the Commonwealth, a reasonable juror could have concluded that Gunn's foot crossed the threshold of Stone's home when Gunn kicked Stone's front door. So the trial court did not err when it refused to grant Gunn's and Paulley's motions for directed verdict on the burglary charges.[32]

### 3. Wanton Endangerment.

■ Gunn was convicted of nine counts of wanton endangerment—one count for each person present in Stone's home when Gunn shot through Stone's front door. Gunn contends his conduct did not support a finding of guilt on nine counts of wanton endangerment.[33] We disagree.

The Court of Appeals has previously rejected this argument. In *West v. Commonwealth*, a defendant was charged with seven counts of wanton endangerment based upon the seven people who were in the homes into which the defendant fired.[34] Similarly to Gunn, the defendant in *West* argued he should only have been charged with three counts of wanton endangerment since he only fired three shots. After analyzing precedent and the wanton endangerment statute, KRS 508.060, the Court of Appeals concluded "the shootings which endangered seven persons in total could be charged as seven separate offenses of wanton endangerment." [35]

We agree with the conclusions and analysis of the Court of Appeals. We have held that Kentucky's wanton endangerment statute is designed to protect "each and every person from each act coming within the definition of the statute. It is not a statute designed to punish a continuous course of conduct." [36] So Gunn was properly charged with wanton endangerment as to each person who was inside Stone's home when Gunn fired into it. The trial court did not err in refusing to grant Gunn a directed verdict on the nine counts of wanton endangerment.

### 4. Murder.

Both Gunn and Paulley contend they each were entitled to a directed verdict on

**30.** *Id.* at 173.

**31.** *See* 12A C.J.S. BURGLARY § 22 (2010) ("Any kind of entry, complete or partial, will suffice for purposes of a burglary statute. All that is needed is entry inside the premises, not entry inside some inner part of the premises. Moreover, the slightest entry is sufficient to constitute the crime of burglary, if it be with felonious intent. Thus, it is not necessary that the person enter the structure with his or her entire body, and the least entry of any part of the body of the accused is sufficient, such as penetration by his or her hand, arm, finger, or foot.") (internal footnotes omitted).

**32.** Although he, apparently, did not personally kick Stone's door open, there was sufficient evidence presented from which a reasonable

juror could have concluded that Paulley was guilty of burglary under a complicity theory of liability.

**33.** Paulley was convicted of one count of wanton endangerment and does not appear specifically to challenge that conviction on appeal. Nevertheless, we must vacate that wanton endangerment conviction, along with all of Paulley's other convictions, because of our conclusion the trial court should have excused juror # 220248 for cause.

**34.** 161 S.W.3d 331, 336 (Ky.App.2004).

**35.** *Id.* at 337.

**36.** *Hennemeyer v. Commonwealth,* 580 S.W.2d 211, 215 (Ky.1979).

the murder charge, but their arguments are not framed in precisely the same manner. So we will discuss each argument separately.

### a. Gunn.

■ Gunn contends he was entitled to a directed verdict on the murder charge because the Commonwealth's evidence was "scant and unreliable...." In other words, Gunn's argument is not that the Commonwealth failed to present any incriminating evidence against him; rather, his argument is that the evidence presented by the Commonwealth was unreliable or should not be believed.

■ Gunn's argument appears improperly to characterize the role of a court in ruling on a directed verdict motion. When ruling on a motion for directed verdict, a court "must assume that the evidence for the Commonwealth is true...."[37] We do not weigh the credibility of witnesses because that task is reserved for the jury.[38] Instead, a court must only determine if there is sufficient evidence from which a reasonable juror could have found a defendant guilty.

In the case at hand, there is no dispute the Commonwealth presented evidence showing Gunn both fired the shot that killed Brown and admitted to others his involvement in shooting Brown. There also was evidence Gunn knew that at least one person was on the other side of the door when Gunn fired through it, meaning intent to kill may reasonably have been inferred.[39] There was sufficient evidence for a jury to have found Gunn guilty of intentional murder.

### b. Paulley.

Paulley's directed verdict argument involves a somewhat confusing amalgam of what he believes to be insufficient evidence, improper remarks by the Commonwealth, and improper jury instructions. As we understand it, Paulley contends there was insufficient evidence to convict him of intentional murder such that the trial court erred by giving the jury a combination instruction it could have used to find Paulley guilty of either intentional or wanton murder.[40] Compounding the error, in Paulley's view, was the Commonwealth arguing to the jury that not all of its members had to agree Paulley was guilty of intentional murder in order for them to convict Paulley of murder. We reject all of Paulley's arguments.

■ First, there was sufficient evidence presented for a reasonable juror to convict Paulley of intentional murder. The Commonwealth presented evidence showing that Paulley and his cohorts—including Gunn—went to Stone's home to rob Stone or exact revenge on Stone in furtherance of Stone's ongoing feud with Eric Ward. Paulley and Gunn went onto

---

37. *Benham*, 816 S.W.2d at 187.

38. *Id.*

39. *See, e.g., Commonwealth v. Suttles*, 80 S.W.3d 424, 426 (Ky.2002) ("It has long been held by this Court that intent can be inferred from the act itself and the surrounding circumstances.").

40. Paulley seems to make no argument there was not sufficient evidence to convict him of wanton murder. To the extent that either Gunn or Paulley argues there was insufficient evidence to convict of wanton murder, we disagree. A reasonable juror could have concluded that although Gunn (acting in concert with Paulley) knew Stone's home was occupied, Gunn might not have known the precise location of those occupants. Firing a shot through the door could have been construed as conduct "manifesting extreme indifference to human life" and "creat[ing] a grave risk of death to another person...." KRS 507.020(1)(b).

Stone's front porch. Paulley handed Gunn the loaded shotgun Gunn used to shoot Brown through Stone's door, knowing that someone else was on the other side of the door. The evidence was sufficient for a reasonable juror to find Paulley guilty of intentional murder. So the trial court did not err by denying a directed verdict as to intentional murder or by instructing the jury it could find Paulley guilty of intentional murder.

■ Since Paulley does not argue he was entitled to a directed verdict on a charge of wanton murder and there was sufficient evidence to support a conviction for intentional murder, it was not inherently improper for the trial court to instruct the jury on both theories.[41]

■ Finally, we reject Paulley's argument for relief based upon the Commonwealth's statements to the effect that the jurors did not have to all agree on whether Paulley was guilty of wanton or intentional murder. We have recently re-emphasized that a jury need not unanimously agree on a specific theory of guilt, provided all theories of guilt available to the jury are supported by sufficient evidence.[42] So the prosecutor did not misstate the law by opining that although all twelve jurors had to believe Gunn and Paulley committed murder, they did not have to take the same "road" or "path" to reach that conclusion.[43]

**5. Jury Verdict Irregularities.**

■ The jury initially returned verdicts finding Paulley and Gunn guilty of all homicide and burglary charges—both principal and every lesser-included offense. Specifically, as to the homicide, Gunn and Paulley were each found guilty of murder, manslaughter in the first degree, and manslaughter in the second degree; Paulley was additionally found guilty of facilitation to murder, facilitation to manslaughter in the first degree, and facilitation to manslaughter in the second degree. As to burglary, Gunn and Paulley were each

---

41. *Benjamin v. Commonwealth*, 266 S.W.3d 775, 784 (Ky.2008) ("when the evidence will support either mental state beyond a reasonable doubt, a combination murder instruction is certainly proper.").

42. *Beaumont v. Commonwealth*, 295 S.W.3d 60, 72 (Ky.2009) ("Although Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve in all criminal cases, [i]t is not necessary that a jury, in order to find a [unanimous] verdict, should concur in a *single* view of the transaction disclosed by the evidence. Rather, where the proof of either [theory] beyond a reasonable doubt constitutes the same offense, the inquiry turns on whether the interpretations are supported by the evidence.") (internal citations and quotation marks omitted).

43. Paulley and Gunn each complain about the prosecutor stating to the jury that intentional murder only required proof of intent to shoot, not intent to kill. For intentional murder, KRS 507.020(1)(a) requires someone to act with "intent to cause the death of another person...." Moreover, the commentary to KRS 507.020 makes it clear that "KRS 507.020(1)(a) designates as murder a homicide that results from conduct of a person whose conscious objective is to cause another's death." So it appears the prosecutor's statement to the contrary was erroneous. The parties dispute whether this issue was properly preserved for review. But we need not determine whether that statement entitles either to relief for two reasons. First, the case is being remanded for other reasons; and we trust the Commonwealth's statements on remand will be carefully tailored to follow the law. Second, Paulley states in his reply brief that "[w]hile the prosecutor's misleading argument on requisite proof of intent is important to an understanding of what knowledge the jury was armed with when it deliberated, *it is not the error on which Mr. Paulley requests relief.*" (emphasis added). Similarly, Gunn states in his reply brief he "is not arguing for a new trial based upon prosecutorial misconduct or improper closing argument."

found guilty of both burglary in the first degree and attempted burglary in the first degree. When questioned by the trial court, the foreperson stated that the jury had found the defendants guilty of all counts because the Commonwealth had stated in closing that the defendants were guilty of the lesser offenses if they were guilty of the principal offenses. Over objection, the trial court denied motions for directed verdicts on the greater offenses and motions for mistrial. Instead, after an overnight recess, the trial court directed the jury to return to deliberations and clarify under which homicide or burglary theories it intended to convict Paulley and Gunn.[44] After renewed deliberations, the jury returned verdicts finding Paulley and Gunn guilty of the principal offenses, murder and robbery in the first degree.

On appeal, Gunn and Paulley contend they were entitled to a directed verdict on the greater offenses or a mistrial. Obviously, this unique factual scenario is highly unlikely to recur on remand. And we are highly skeptical that a mistrial was warranted. However, we need not definitively determine whether Paulley and Gunn were entitled to such a drastic curative measure because their cases are already being remanded to the trial court on other grounds. Nevertheless, we shall briefly discuss the directed verdict argument

since Gunn and Paulley would not be eligible to be retried on the principal offenses of murder and robbery if we accept their argument that the jury's finding of guilt on the lesser-included offenses entitled them to a directed verdict on the principal offenses.

We have already held there was sufficient evidence to submit the principal burglary and murder charges to the jury. Moreover, the jury's highly unusual verdicts cannot be deemed an acquittal—implied or actual—of any principal charges since the jury also expressly found Paulley and Gunn guilty of the principal offenses. So the doctrine of implied acquittal provides no relief to either Gunn or Paulley since there were no acquittals.

■ Our precedent is clear that "[a] defendant may not be charged and convicted of both a major offense and lesser-included offense arising out of the same facts."[45] So the jury's initial finding of guilt on both principal and lesser-included offenses was erroneous. But precedent counsels us to view the jury's improper findings of guilt on lesser-included offenses as being mere surplusage, especially since the trial court inquired of the jury about its intent and permitted the jury to correct its error.[46] So the jury's improper initial

**44.** The parties disagree as to whether the jury was deliberating when it was released for the night—prior to the time the next day when the trial court ordered it to again deliberate to clarify the verdicts it had rendered. Sequestration is mandatory while a jury is deliberating guilt on a felony charge, RCr 9.66. But sequestration is not mandatory between the guilt and penalty phases of a trial. *See, e.g., Bowling v. Commonwealth,* 873 S.W.2d 175, 182 (Ky.1993) ("RCr 9.66 does not require that jurors be sequestered between the guilt and penalty phases of the trial. Sequestration is required only after a felony case has been submitted to a jury for its verdict."). We need not resolve whether sequestration was required under these highly peculiar facts be-

cause neither Gunn nor Paulley has demonstrated any concrete prejudice from the lack of sequestration, and their convictions are being vacated and remanded on other grounds.

**45.** *McGinnis v. Wine,* 959 S.W.2d 437, 439 (Ky.1998).

**46.** *See, e.g., United States v. Howard,* 507 F.2d 559, 561–63 (8th Cir.1974) (finding jury's verdicts of guilt on lesser-included offenses to be surplusage and refusing to order that defendant be sentenced on only lesser-included offenses instead of principal offenses); *McGinnis,* 959 S.W.2d at 439 (finding jury's

verdicts do not entitle Gunn or Paulley to relief, nor does the curative action the trial court took in order to correct the jury's errors.

## C. No Error in Refusing to Grant Separate Trials.

■ Both Paulley and Gunn contend the trial court erred by ordering them to be tried together, along with co-defendant Taylor. Their arguments focus mostly on the purported unfairness of having Taylor, who had already struck a deal with the Commonwealth at the time of trial, being permitted to sit at the defense table and being afforded the opportunity to collaborate upon such matters as peremptory strikes. But Taylor was, in Paulley's words, "inexplicably acquitted" by the jury. So there appears to be no possibility that Taylor will again stand trial with Gunn and Paulley on remand. In other words, any issues involving the purported prejudice Gunn and Paulley suffered as a result of being jointly tried with Taylor are moot. Instead, our focus must be on whether the trial court erred by trying Paulley and Gunn together, *i.e.*, whether they may be again tried together on remand.

■ The main argument made by Paulley and Gunn is, essentially, that a joint trial was prejudicial to each of them because they had antagonistic defenses. "A criminal defendant is not entitled to severance unless there is a positive show-

ing prior to trial that joinder would be unduly prejudicial."[47] And, antagonistic defenses, including defendants casting blame on each other, standing alone, are not unfairly prejudicial and do not invariably mandate separate trials.[48] Actually, the fact that defendants may have conflicting versions of the events in question "or the extent to which they participated in [them], vel non, is a reason for, rather than against, a joint trial. If one is lying, it is easier for the truth to be determined if all are required to be tried together."[49] And it must be borne in mind that a trial court has "considerable discretion" in ruling upon a severance motion.[50]

We reject Gunn's specious argument that there was no evidence against him and that he must have been, essentially, found guilty by association or because he was framed by his co-defendants. This is merely a clever attempted variation on his previously rejected argument that he was entitled to a directed verdict. We have already held there was sufficient evidence to submit the charges to the jury, and it was up to the jury to sift through the evidence to determine what it believed and what it rejected. The facts and circumstances underlying the charges against both Gunn and Paulley were the same; and, taking into account all the facts and circumstances of these cases, we conclude the trial court did not abuse its discretion by ordering Gunn and Paulley be tried

improper finding of not guilty on lesser-included offenses to be surplusage for which retrial was not barred and opining that asking jury to again deliberate in order to return a proper verdict "may have been the better course...").

47. *Humphrey v. Commonwealth*, 836 S.W.2d 865, 868 (Ky.1992).

48. *See, e.g., Davis v. Commonwealth*, 967 S.W.2d 574, 581 (Ky.1998) ("Even if the de-

fendants attempt to cast blame on each other, severance is not required."); *Ware v. Commonwealth*, 537 S.W.2d 174, 177 (Ky.1976) ("neither antagonistic defenses nor the fact that the evidence for or against one defendant incriminates the other amounts, by itself, to unfair prejudice.").

49. *Ware*, 537 S.W.2d at 177.

50. *Humphrey*, 836 S.W.2d at 868.

together.[51]

## D. Exclusion of Paulley's Statement.

■ The final issue we must discuss is raised by Gunn alone. Gunn contends the trial court erred by excluding on hearsay grounds a statement purportedly made by Paulley that Ward fired the fatal shot. We disagree with the argument that the trial court erred.

Megan Sanders was an acquaintance of Paulley and, along with others, spent time with Paulley in a park shortly after Brown was killed. When called as a witness by the Commonwealth, Sanders began to relate her version of the events on the night in question. During the early portions of Sanders's testimony, the Commonwealth requested a bench conference at which the Commonwealth stated it believed that Sanders would shortly testify that Paulley had told Sanders that Ward had fired the shot that killed Brown. The Commonwealth stated that such a statement was inadmissible hearsay; Gunn's counsel stated that the statement should be admitted as a statement against interest. The trial court ruled the Commonwealth was not required to introduce any statements in its own case that it did not wish to introduce. The trial court then stated it believed the statement would be inadmissible hearsay if defense counsel sought to introduce it on cross-examination. When Gunn later sought to question Sanders about Paulley's alleged statement about Ward having been

the shooter, the trial court ruled the statement inadmissible.

All parties seem to agree the statement—whatever its precise content would have been—would have been hearsay. And hearsay is not admissible, unless it fits within an exception to the hearsay rule.[52]

Gunn argues two main exceptions to the hearsay rule. Neither is persuasive.

First, Gunn argues that the statement should have been deemed admissible under the holding of *Chambers v. Mississippi.*[53] We have summarized the pertinent aspects of *Chambers* as follows:

> In *Chambers*, another person, McDonald, who was not charged with the offense, had signed a sworn confession to having committed the murder. He had also made unsworn statements to others in which he admitted being the killer. The defendant was permitted to call McDonald as a witness and to introduce the sworn, written confession. However, McDonald denied committing the murder and recanted the confession, offering a plausible explanation for having originally signed it. Under Mississippi's "voucher" rule of evidence, the defendant was prohibited from thereafter impeaching McDonald, his own witness, either by cross-examination or by use of his prior unsworn statements. Mississippi's hearsay rule did not permit McDonald's prior inconsistent, but un-

---

**51.** On remand, of course, the parties may again ask the trial court for separate trials. Our holding in these appeals should not be construed as a mandate that Gunn and Paulley must be jointly tried upon remand; that decision must be made by the trial court after consideration of any arguments made for, or against, a joint trial by Gunn, Paulley, and the Commonwealth. Instead, our holding is only that neither Gunn nor Paulley is entitled to relief by virtue of having already been tried together.

**52.** *See, e.g., Walker v. Commonwealth,* 288 S.W.3d 729, 739 (Ky.2009) ("A fundamental rule in the law of evidence is that hearsay evidence is inadmissible evidence. However, hearsay evidence may be admissible if it meets one of our well established exceptions.") (internal quotation marks omitted).

**53.** 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

sworn, statements to be used for substantive purposes, and did not contain an exception for hearsay statements against penal interest. Thus, the defendant could not rebut McDonald's recantation of his sworn confession and was essentially prevented from presenting his best defense to the charges against him. It was held under those circumstances that where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.[54]

Plainly, *Chambers* is distinguishable from the case at hand. *Chambers* was concerned with a situation in which a defendant could not impeach his own witness and whether that inability deprived a defendant of a right to defend himself—a concern not present in the case at hand. Equally important, the statement at issue in *Chambers* was self-incriminating; Paulley's alleged statement at issue in the present case directly incriminated Ward and only indirectly incriminated Paulley by, at most, merely placing Paulley at the scene of the shooting. So we do not believe that *Chambers* applies, nor that our longstanding rules deeming hearsay inadmissible are, in this case, being "applied mechanistically to defeat the ends of justice."[55]

■ Gunn's second argument in favor of the statement's admissibility is even less meritorious. Gunn contends that the statement was admissible as the statement of a party-opponent.[56] We have recently rejected an identical argument, explaining

that "[f]or a party to use another's statement against them, the express language of the rule [*i.e.*, KRE 801A] and general understanding indicate that such use can only occur between party opponents. Co-defendants in a criminal prosecution are treated as the same party for purposes of the rule."[57] So the statement at issue, being the statement of a co-defendant, does not fall within the ambit of KRE 801A.

## IV. CONCLUSION.

For the foregoing reasons, Steven Paulley's and Henny Gunn's convictions are vacated; and their cases are remanded to the trial court for proceedings consistent with this opinion.

All sitting. ABRAMSON, NOBLE, and SCOTT, JJ., concur. VENTERS, J., concurs, in part, and dissents, in part, by separate opinion in which CUNNINGHAM and SCHRODER, JJ., join.

VENTERS, J., concurring, in part, and dissenting, in part:

While I otherwise agree with the sound rationale expressed by the Chief Justice in the majority opinion, I must part company with my colleagues regarding the burglary convictions. Appellants Paulley and Gunn should have been granted a directed verdict dismissing the burglary charges because the evidence presented, when viewed most favorably to the Commonwealth, failed to prove the essential element of entry into the residence.

---

**54.** *Dillard v. Commonwealth,* 995 S.W.2d 366, 372 (Ky.1999) (citations and quotation marks omitted).

**55.** *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038.

**56.** *See* Kentucky Rules of Evidence (KRE) 801A(b)(1) ("A statement is not excluded by

the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is ... [t]he party's own statement....").

**57.** *Walker,* 288 S.W.3d at 740 (emphasis and internal footnote omitted).

I have no quarrel with our longstanding and well-settled rule of law that the element of entry contained in our burglary statutes is satisfied by proof of a slight entry into a building by a perpetrator's head, hand, foot, or other body part, or the extension of same by an instrument with which he or she intends to commit a crime. But conviction still requires proof beyond reasonable doubt of **some** entry, however slight. Evidence of slight entry is far different from slight evidence of entry.

Here, there is no evidence of entry. There is only an inference of slight entry. As stated in the majority opinion: "The evidence showed that, **at most,** the front door of Stone's residence opened slightly when it was kicked by Gunn. So Gunn's foot **could have** crossed the threshold when the door was ajar." (Emphasis added.) In its entirety, the evidence established that Gunn knocked on the door; and when no one opened it, he kicked it, **twice** according to some witnesses and **two or three times** according to another. When the door still failed to open, Gunn fired the fatal shots through the door and left the porch. When the police arrived, the door was still locked with the victim leaned against it. It had never completely separated from the door jamb. At most, Gunn's kicking flexed the lower portion of the door enough to allow witnesses to see light shine through. No one saw a foot or any part of Gunn's body, nor even his shoe or any instrument cross the threshold. That his foot "**could have**" done so may amount to probable cause, but it falls far short of proof beyond a reasonable doubt. Under the facts of this case, it was clearly unreasonable for a jury to believe beyond a reasonable doubt that Gunn or any part of his body even slightly entered the building.

There was no doubt whatsoever that Gunn kicked the door in an unsuccessful attempt to gain entry. If that constitutes burglary, what then constitutes an attempted burglary? Stepping onto the porch? Knocking on the door?

Given the evil deeds of Gunn and Paulley and the multiple sentences imposed upon them for crimes that were properly supported by sufficient evidence, one might be tempted to regard this issue as having no real consequences. The burglary sentences are totally subsumed by the life sentences imposed for the murder of Rocky Brown. But the majority's holding that this evidence is sufficient to support a burglary conviction will henceforth govern when a burglary conviction matters mightily. We must not forget that this was a capital murder case in which the burglary charge was an essential aggravating factor for the imposition of a death penalty. This holding will also revisit us with the most distasteful consequences when the scant inference of slight entry converts a hard knock on a door into a Persistent Felony Offender (PFO) sentence of twenty-plus years; or when we see a young man, who should have been convicted for harassment or attempted burglary, become a felon because he pounded too hard on a door before giving up and going home.

For the reason set forth above, I would reverse the burglary convictions. I respectfully concur, in part, and dissent, in part, with the majority opinion.

CUNNINGHAM and SCHRODER, JJ., join.