**Christopher David HENNEMEYER, Movant,**

v.

**COMMONWEALTH of Kentucky, Respondent.**

Supreme Court of Kentucky.

March 20, 1979.

Jack E. Farley, Public Advocate, William M. Radigan, Asst. Public Defender, Frankfort, for movant.

Robert F. Stephens, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, for respondent.

STERNBERG, Justice.

On December 17, 1976, movant, Christopher David Hennemeyer, was indicted by the Grand Jury of Pike County, Kentucky, for the following offenses: ten counts of wanton endangerment in the first degree (KRS 508.060) and one count of theft and unlawful taking of a 1970 Ford automobile valued at $100 or more (KRS 514.030—Indictment Number 2605). In Indictment Numbers 2580, 2581, 2582 and 2583, the description of wanton endangerment was by shooting a 30.30 rifle at and in the direction of police officers Paul Maynard and Lacy Goodman. Indictment Numbers 2564, 2565, 2566, 2567, 2568 and 2569 de-

scribed the offenses of wanton endangerment by shooting a 30.30 rifle into the automobile occupied by police officers Dennis Potter and Ernie Stepp. The trial court entered an order that Indictment Numbers 2580 through 2583 be treated as one offense. Hennemeyer moved the trial court to dismiss all of the ten wanton-endangerment counts, save one, No. 2564, because they allegedly constitute a single course of action. The motion to dismiss was denied. The charges were all tried together and to a jury. The jury found Hennemeyer guilty on all counts and fixed his punishment at one year in the penitentiary on the charge of theft, one year on the four counts of wanton endangerment which the court had merged into one offense, and one year on each of the remaining six wanton-endangerment charges. The sentences were ordered to run consecutively.

On appeal to the Court of Appeals of Kentucky, the judgment of the circuit court was affirmed. This court granted discretionary review on October 24, 1978.

The issues presented to this court are:

"I. The court below erred to appellant's substantial prejudice and violated appellant's constitutional guarantee against double jeopardy as well as his right under KRS 505.020 to be free from multiple prosecutions for the same offense when appellant's motion to merge six counts of wanton endangerment in the first degree into one offense was overruled."

II. The appellant was denied his constitutional right to effective assistance of counsel when his court-appointed attorney failed to properly conduct a pretrial investigation which resulted in rebuttal which appellant's counsel was unaware that existed."

Wanton endangerment is defined by KRS 508.060(1), as follows:

"A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which cre-

ates a substantial danger of death or serious physical injury to another person."

The movant argues that the six counts of wanton endangerment by shooting a rifle into the automobile occupied by Officers Potter and Stepp (Indictment Numbers 2564 through 2569) constitute a continuous course of conduct which manifests only one crime. As such, Hennemeyer contends that the trial court erred in putting him to trial for more than one offense. In support of his argument, he cites KRS 505.020(1)(c), which provides:

"(1) When a single course of conduct of a defendant may establish the commission of more than one offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense when:

(c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses."

We need to put the commission of the offenses in its proper setting. The evidence discloses that the truck in which Hennemeyer and his confederate, Jonathan Woodell, made their first getaway, the 30.30 rifle which was used by Hennemeyer in firing on the police officers, together with its ammunition, and the 1970 blue Ford in which the second escape was attempted were all stolen.

On November 27, 1976, Hennemeyer, a nomad, was about to relieve himself in front of the Pic Pac Market, in Pikeville, Kentucky, and the manager protested. A scuffle ensued and Hennemeyer hurriedly departed in an awaiting truck driven by his male friend, Jonathan Woodell. The police were called and the manager furnished Officers Slone and Runyon, of the Pikeville City Police, the description of the two men and the truck. The officers took out in pursuit of the truck and, within a very short time and after traveling only about four miles, found it wrecked; however, the

two men had fled. This minor incident developed into unusual and dangerous proportions, which resulted in the subject charges being placed against Hennemeyer. Trooper Maynard, of the Kentucky State Police, and Officers Slone and Runyon made an investigation at the scene of the wreck, but at this time they were unable to locate Hennemeyer or his confederate. Officers Slone and Runyon assisted in the investigation for about an hour. They departed; however, about fifteen minutes later they were called back to the wreck. Upon arriving they saw two men climbing up a hill to the ridgetop. One of the men was wearing boots and carrying a rifle. The officers got out of their car, but did not give chase. By this time, in addition to Officers Slone and Runyon, Officers Goodman and Jim Bonds, as well as Kentucky State Troopers Larry Prater and and Paul Maynard, were on the scene. By the use of their public address system, Trooper Prater called to the two men to surrender, which was not done, and they made their escape again. However, there were four shots fired from the direction of the fleeing persons and the bullets hit the ground close to the officers. The officers immediately took cover, but did not return the fire. The shots were fired at irregular intervals, with a lapse of as much as two minutes to as little as seconds between the shots. Thus ended the pursuit on Saturday, November 27, 1976.

The following day, Sunday, November 28, 1976, Trooper Stepp, accompanied by Detective Potter, while traveling south on Highway 23, witnessed a car being driven in an irregular manner. Trooper Stepp made an attempt to stop the car by turning on his blue light and sounding his horn; however, the driver of the car refused to stop or pull over and Trooper Stepp gave chase. While in pursuit and at times with only about fifty feet between the two cars, the movant, who was a passenger in the fleeing car, leaned out of the right front window and over a period of approximately fifteen minutes fired five shots from a 30.30 rifle at and into the police car. After each shot was fired, the movant would pull himself back into the car. As the officers would again start closing in on the fleeing vehicle, movant would again lean out of the window, take aim, and fire at the pursuing police. The chase, over a period of four or more miles, ended when the car stopped on Little Robinson Creek Road, where movant and his confederate fled on foot. While fleeing on foot, the movant stopped long enough to fire one shot at the pursuing police, who at this time had also gotten out of their car. The car from which movant fired the shots was a 1970 blue Ford, having a value of some $800 to $1200. It was stolen from Dan Thornberry, Pikeville, earlier in the day and recovered by him on Little Robinson Creek Road when it was abandoned. The officers continued their pursuit on foot in search of movant and his confederate, who were located in a smoke house near the road. The officers called to the men to surrender and to throw out their gun before them. After several calls, the gun was thrown out and immediately thereafter Hennemeyer and Woodell appeared and surrendered. Their arrests were made by Trooper Larry Prater, of the Kentucky State Police, about 2:20 p. m. on November 28, 1976.

Following the arrests, Hennemeyer was interrogated by Detective Potter, of the Pike County Police Department. Hennemeyer related the events of the two days with particularity. For example, he told the detective that he stole the truck in Marion, North Carolina; that it contained a rifle and about forty rounds of ammunition, some hypodermic needles similar to the kind used on a cattle farm, and some ear decks. He said that when he and Woodell wrecked the truck, they fled into the hills; that he fired the shots to slow the officers down and to increase the distance between them; that he and Woodell kept moving through the night; that when stopping to rest he would cover himself with leaves to keep warm; that around daylight they came out of the hills close to the place where they had left the truck; that they followed the ridgeline to a landfill, thence crossed the road to the railroad tracks and then fol-

lowed the tracks into town; that on their way they stopped at the Dixie Coal Company tipple and hid the rifle; and that when in town he bought some candy and a newspaper at the News Nook. He further related how the two of them went to a parking lot and began looking until they found a car with the keys in it; that they then stole the car and drove to the Dixie Coal Company tipple, picked up the rifle and ammunition; and that they then left town.

■ With this narrative background, we can consider the propriety of whether the trial court erred in refusing to merge the six counts of wanton endangerment in the first degree into one offense.

Section 13 of the Constitution of this Commonwealth and the Fifth Amendment to the United States Constitution forbid that a person be twice put in jeopardy for the same offense. Thus, movant argues that since Indictment Numbers 2564 through 2569 constitute only one offense, he was twice placed in jeopardy for the same offense. We need, therefore, to determine whether the conduct of the movant constitutes one, and only one, offense or whether his conduct constitutes six separate offenses.

The four shots first fired in the direction of the police officers were considered by the trial court as a continuing course of conduct constituting a single offense of wanton endangerment. We fail to find any fault or criticism made by movant to this procedure. The movant contends that the six shots fired at the police cruiser while it was giving chase to the car in which he was riding also constitute a continuous course of conduct, the same as did the four shots. Therefore, movant opines that they likewise constitute a single offense.

The offense of wanton endangerment is a creature of the regular 1974 session of the Kentucky General Assembly. The Penal Code became effective as of January 1, 1975.

"COMMENT—The offense of wanton endangerment is created in KRS 508.060 and 508.070. It imposes criminal sanctions upon conduct which causes substan-

tial risk of death or injury to another person. It is committed despite the fact that no real injury occurs. The conduct that is punishable under this offense would be sufficient to constitute assault (as that offense is defined in the Penal Code) if a physical injury had resulted from the conduct. Since the failure of the defendant in fact to cause injury is fortuitous, it is deemed by the Code only to affect the extent of his sanction. The statutes create two degrees of this offense, the only difference in the two being that the higher degree contemplates the existence of conduct which threatens death or serious physical injury and the lower degree conduct which threatens only non-serious physical injury.

Previous law did not have an offense of this type which had general application, i. e., susceptible of commission through any type of conduct. However, there were numerous special types of injury-threatening offenses. Illustrative types of conduct which can be sufficient to support a conviction of this offense are (i) an act of shooting into a dwelling or an occupied vehicle, (ii) a grossly careless use of firearms or explosives; (iii) the flourishing of a deadly weapon in public; etc."

1 Palmore and Lawson, Instructions to Juries in Kentucky, Sec. 2.20, p. 78.

The question of when an act or series of acts constitute a single offense or multiple offenses is not new or novel or subject to fixed standards. In *Queen v. Commonwealth*, Ky., 434 S.W.2d 318 (1968), we said:

"The question of when an act, transaction or course of conduct shall be considered to constitute multiple offenses rather than a single offense is one on which the law is unclear, and the answer to which may vary according to a varying legislative intent."

What was the legislative intent? Was the legislative intent to punish a particular act or to punish a course of conduct? If the intent was to punish a course of conduct, then movant should only be convicted of one offense. On the other hand, if the

legislative intent was to punish the act, then, and in that event, each act of shooting constituted a separate offense and movant properly would be charged with the commission of six counts of wanton endangerment. See *United States v. Jones*, 533 F.2d 1387 (6th Cir., 1976). In discussing legislative intent in *Commonwealth v. Colonial Stores, Incorporated*, Ky., 350 S.W.2d 465 (1961), we said, " * * * in case of ambiguity the construction will be against turning a single transaction into multiple offenses." We shall be so guided in the determination of the present action.

In Brickey, Kentucky Criminal Law, Section 9.07, in discussing wanton endangerment, the author writes:

"The Penal Code fleshes out the pattern of assault offenses with a new concept: wanton endangerment. This is designed to provide criminal sanctions when an actor has engaged in wanton conduct but has caused no injury. Wanton conduct is punishable with respect to other crimes against the person only if it results in the death of the victim or physical injury. Absent such a result, the actor's conduct is not punishable no matter how dangerous it is. It cannot constitute an attempt because one cannot attempt to act wantonly. There must be *intent* to commit a crime to be guilty of a criminal attempt."

In *Commonwealth v. Colonial Stores, Incorporated*, supra, this court discussed and cited prior opinions dealing with single and multiple offenses, after which it wrote, " * * * we shall say that our examination and analysis of the cases has disclosed no basic theory or rule for determining when there is only one offense and when there are multiple offenses." The court went on to say:

"We shall not undertake here to lay down any general rule or rules applicable to all situations. We shall restrict ourselves to an effort to determine what the legislature meant in the particular statute here in question, as regards the particular facts here involved."

We shall follow that procedure in the instant case.

The Kentucky statutes dealing with the offenses of assault are designed to protect each individual from defined physical abuse, not only for protection from defined actual physical abuse but protection from defined attempted physical abuse. There were instances in our framework of designed criminal assaults and attempted criminal assaults prior to January 1, 1975, where a victim found himself aggrieved within a criminal statute defining elements of his complaint without criminal remedy. For instance, in those offenses absent a trauma, the conduct of the accused, no matter how dangerous, was not criminally punishable. The wanton endangerment statute, KRS 508.060, remedied this situation and, by reason thereof, a course of conduct which, prior to the adoption of this statute, was not punishable found itself within the framework of the criminal statute of wanton endangerment. We find it significant that intent is a necessary element of the offense of assault or attempted assault. The offense of wanton endangerment is not dependent upon intent. *Thomas v. Commonwealth*, Ky., 567 S.W.2d 299 (1978). As a matter of fact, we can think of no situation where intent to commit wanton endangerment would arise. Did the General Assembly, by the enactment of KRS 508.060, intend to punish a particular act or did it intend to punish a continuous course of conduct? We have no difficulty in arriving at the conclusion that it was designed to protect each and every person from each act coming within the definition of the statute. It is not a statute designed to punish a continuous course of conduct. Since each of the six shots constituted a separate offense, the movant was not twice placed in jeopardy for the same offense. The trial court did not err in putting the movant to trial on Indictment Numbers 2564 through 2569.

■ The movant's complaint that by reason of his trial counsel's failure to learn of a confession he had made, he was denied his constitutional right to effective assistance of counsel is without merit.

We are confronted with the admitted fact that movant's charge of ineffective assistance of counsel was not presented to the trial court for consideration. Until it was so presented and denied, there was no error for appellate review. *Poteet v. Commonwealth*, Ky., 556 S.W.2d 893 (1977). We must, therefore, decline to consider this challenge. See *Hamilton v. Commonwealth*, Ky., 580 S.W.2d 208 (rendered March 20, 1979).

The decision of the Court of Appeals of Kentucky is affirmed.

All concur.