RENDERED: JUNE 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0296-DG

BRANDON BLAIR                                                 APPELLANT

V.                  ON REVIEW FROM COURT OF APPEALS
NOS. 2021-CA-0537, 2021-CA-0490, 2021-CA-0535,
& 2021-CA-0536
JOHNSON CIRCUIT COURT
NOS. 20-CR-00204, 20-CR-00205, 20-CR-00206
AND 20-CR-00207

COMMONWEALTH OF KENTUCKY                       APPELLEE

## OPINION OF THE COURT BY JUSTICE BISIG

## <u>AFFIRMING</u>

Brandon Blair was separately indicted in Johnson Circuit Court for five felony counts of trafficking in methamphetamine. As part of his conditional release on bond, Blair agreed to appear at subsequent proceedings. After failing to appear at a scheduled court date, Blair was charged in five separate indictments of first-degree bail jumping—one charge for each underlying trafficking indictment scheduled to be heard that day. Blair filed a motion to dismiss four of the bail jumping charges based on double jeopardy, which the trial court denied. He subsequently entered a conditional guilty plea and was sentenced to a total of ten years in prison. The Court of Appeals affirmed his

convictions. Having granted discretionary review and hearing oral arguments, we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

In August 2019, Brandon Blair was charged with five felony counts of first-degree trafficking in methamphetamine and separately indicted for each charge in Johnson Circuit Court. Blair was arraigned on all charges during one court appearance and the trial court set the same $5,000 bond in each case. A separate bond form was executed in each case which set forth conditions, including a requirement to participate in a drug treatment program and Blair's promise to appear at subsequent proceedings. When Blair failed to appear at his scheduled court date, he was charged in five separate indictments of first-degree bail jumping—one bail jumping charge for each underlying indictment scheduled to be heard that day—and charged with being a persistent felony offender (PFO) in the second degree.

Following the bail jumping indictments, Blair moved to dismiss four of the five bail jumping charges. He argued he only committed a single act of bail jumping because he missed one court date, and further asserted that the latter four indictments violated double jeopardy for punishing the same act of nonappearance as the first indictment. The Commonwealth argued that Blair committed five acts of nonappearance by missing a court date in each case. The trial court agreed with the Commonwealth and denied Blair's motion to dismiss. Blair ultimately entered a plea agreement, specifically reserving his right to appeal the double jeopardy issue, and was sentenced to five years in

2

prison. In the underlying trafficking cases, Blair also entered a plea agreement to serve five years in prison for a total sentence of ten years.[1]

On appeal, the Court of Appeals unanimously affirmed the trial court, reasoning that the "unit of prosecution" for first-degree bail jumping is each felony charge for which a defendant fails to appear.[2] The appellate court pointed to the bail jumping statute, Kentucky Revised Statute (KRS) 520.070(1), which provides that

> [a] person is guilty of bail jumping in the first degree when, having been released from custody by court order, with or without bail, upon condition that he will subsequently appear at a specified time and place in connection with a charge of having committed a felony, he intentionally fails to appear at that time and place.

The Court of Appeals noted that the legislature used "a charge" rather than "one or more charges" and interpreted that language to express the legislature's intent to punish a defendant for failing to appear to answer a specific charge. This Court granted discretionary review and heard oral arguments.

## ANALYSIS

The sole issue presented in this appeal is whether five bail jumping convictions, resulting from the singular failure to appear at one court appearance, constitutes a violation of double jeopardy. Following careful review, we conclude it does not.

---

[1] The plea agreement dictated that Blair received one year on each of the trafficking and bail jumping charges, all to run consecutively for a total sentence of ten years in prison. The PFO charges were dismissed.

[2] *Blair v. Commonwealth,* 2021-CA-0490-MR, WL 3767202, at *3 (Ky. App. June 2, 2023).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution preclude multiple convictions for the same offense. It is inherent in the double jeopardy prohibition that the multiple convictions must arise from the same act. When a defendant is convicted of violating one statute multiple times, we must determine the unit of prosecution intended by the legislature to ensure each conviction passes constitutional muster. This Court reviews questions of statutory interpretation de novo, granting no deference to the lower courts. *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Bischoff,* 248 S.W.3d 533, 535 (Ky. 2007).

"Our goal in statutory interpretation is to carry out the intent of the legislature." *Bloyer v. Commonwealth,* 647 S.W.3d 219, 224 (Ky. 2022). When interpreting a statute,

> we must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.

*Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (citations and quotations omitted).

Blair argues that the pertinent statutory language is the condition requiring a defendant to appear at a "specified time and place," and thus the unit of prosecution of the bail jumping statute is the missed court appearance. We disagree. This position would allow the unit of prosecution for the bail jumping statute to turn on administrative decisions regarding case scheduling

4

and whether to combine criminal indictments into one court date. Such an interpretation based on administrative convenience is misplaced, and plainly prioritizes court scheduling over the purpose of the bail jumping statute—to hold defendants accountable for avoiding court processes and disrupting the orderly administration of justice.

Blair was released on five separate bond orders, each of which constituted a separate promise to appear in court to answer that particular charge. His failure to appear resulted in five distinct injuries to the administration of justice, despite missing a single court appearance. Scheduling court appearances is an administrative matter and should certainly yield to upholding the integrity of the legal process. If the unit of prosecution were the single missed court appearance, it would thwart the authority to require a defendant to answer for each crime, penalize the Commonwealth and the courts for attempting to minimize appearances for attorneys and their clients, and effectively remove accountability for multiple alleged criminal offenses.

Notably, the General Assembly created two separate bail jumping statutes–one for felonies, KRS 520.070, and one for misdemeanors, KRS 520.080. As the Court of Appeals aptly noted, if a defendant committed both a felony and a misdemeanor, then failed to appear at a single combined court appearance for both charges, he could be convicted of two counts of bail jumping – one conviction under KRS 520.070 and another under KRS 520.080. But if a person commits two felonies, which would necessarily be more serious

5

than the commission of a felony and a misdemeanor, Blair's asserted position would only allow one bail jumping conviction.

Had the legislature intended to punish nonappearance, there would be no need for two separate offenses. "A statute should not be interpreted so as to bring about an absurd or unreasonable result." *Ky. Indus. Util. Customers, Inc. v. Ky. Utils. Co.*, 983 S.W.2d 493, 500 (Ky. 1998). Likewise, the bail jumping statute criminalizes failure to appear "in connection with a charge of having committed a felony." KRS 520.070(1). So each failure to appear is connected to the underlying felony, making consideration of the number of charges and how those charges are presented to the court a relevant consideration.

In the realm of criminal prosecutions, there are numerous ways an individual may be charged for conduct that allegedly violates our laws. Frequently, when a defendant is charged with violating a statute, they will have several distinct charges brought under the umbrella of one criminal indictment. In other contexts, one individual can have multiple charges of violating the law that result from crimes allegedly committed independently. These charges can be from offenses occurring on different days and times involving unique circumstances. In this circumstance, numerous indictments or separate and distinct cohorts of charges are levied against an individual for different crimes. In the first context, a defendant can have one criminal indictment with numerous separate offenses. In the second scenario, a defendant has multiple criminal cases which generate several unique and independent case numbers.

6

In either circumstance, trial judges often attempt for the efficient administration of justice, to provide a defendant with the benefit of having a minimum number of court appearances. As a result, as indictments arrive for arraignment, the trial judge will endeavor to place the new criminal case on the same court date as a pre-existing charge. Despite being placed together on a court calendar there exists a separate case file, case number, and ultimately the potential to try each indictment separately.

We have previously held that a single act may result in numerous charges. In *Paulley v. Commonwealth*, the defendant was charged with nine counts of wanton endangerment after firing a single shot through the front door of a home in which nine people were present. 323 S.W.3d 715 (Ky. 2010). Despite only committing one singular act, the Court deemed the nine separate charges permissible. Similarly, while Blair only committed one singular act of nonappearance, five bail jumping charges are nevertheless permissible because he violated the bail jumping statute by failing to appear in conjunction with his five underlying felony charges which were brought in five separate indictments.

Blair was released from custody on separate orders in five separate felony drug trafficking cases. The trial court issued orders in all five cases which conditionally released Blair, including a condition that he would subsequently appear in the future. After failing to appear, he was then indicted for five counts of first-degree bail jumping corresponding to those five underlying drug trafficking indictments. Although Blair's appearance before the court in each of the trafficking cases was scheduled for the same day and

7

time, by failing to appear, Blair violated five separate court orders, therefore justifying the imposition of five bail jumping charges. The Court of Appeals correctly found the act being punished under KRS 520.070 was "not simply the failure to appear, but the failure to appear to answer *a specific charge.*" *Blair*, 2023 WL 3767202, at *3.

The underlying trafficking cases were filed as five indictments and each assigned separate case numbers. Generally, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Just as the decision to bring trafficking charges against Blair under five separate indictments is permissible prosecutorial discretion, the prosecutor properly exercised his discretion in bringing five bail jumping charges for one failure to appear. Moreover, our trial courts retain the utmost discretion in case management matters to ensure efficient and prompt delivery of justice.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Johnson Circuit Court.

All sitting. Lambert, C.J.; Conley, and Goodwine, JJ., concur. Nickell, J., dissents by separate opinion in which Keller and Thompson, JJ., join.

NICKELL, J., DISSENTING: At bottom, the question presented in this matter is whether five bail jumping convictions, resulting from the singular

8

failure to appear on the same date, at the same time, in front of the same judge, constitutes a violation of double jeopardy principles. I conclude it does and am therefore compelled to dissent.

Blair sought dismissal of four of his bail jumping indictments, asserting they violated the double jeopardy protections of the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution. He contended the multiple indictments would subject him to being punished five times for a single act. The Commonwealth countered that Blair had been released from custody on five separate bonds and therefore his act of missing court constituted five separate offenses. Without elucidating any reasoning, the trial court summarily denied Blair's motion to dismiss.

Before the Court of Appeals, Blair argued the statutory language set forth in KRS 520.070(1) was intended by the Legislature to punish a defendant's act of failing to appear at a specified time and place, regardless of the number of charges or cases attached to that singular required court appearance, and that this focus was the appropriate unit of prosecution. Conversely, the Commonwealth argued proper statutory interpretation established that the Legislature had intended the measure of prosecution to reflect the combined number of charges or cases separately ordered to be addressed at a particular time and location.

The Court of Appeals generally agreed with the Commonwealth that the act being punished under this statute was "not simply the failure to appear, but the failure to appear to answer *a specific charge.*" *Blair v. Commonwealth,*

9

2023 WL 3767202, at *3.  It concluded "[t]he plain language of the statute clearly indicates that the unit of prosecution for first-degree bail jumping is each felony charge for which a defendant fails to appear." *Id.*  The Court of Appeals noted the statute criminalizes nonappearance "*in connection with a charge of having committed a felony.*"  *Id.*  The Court of Appeals believed Blair's interpretation of the statute would lead to incongruous and absurd or unreasonable results.

The Court of Appeals rejected Blair's invitation to adopt the logic set forth in cases from Florida, Oklahoma, and Washington, D.C., which held that multiple convictions of bail jumping for a single missed court appearance constituted a double jeopardy violation.  Instead, the Court of Appeals was persuaded by the Commonwealth's citation to the reasoning of a Connecticut intermediate appellate court—even though that decision had been appealed to and affirmed on different grounds by the Supreme Court of Connecticut.  Contrary to the cases cited by Blair, the Appellate Court of Connecticut found no double jeopardy violation in a defendant's conviction of two counts of bail jumping in the first degree for missing a single court appearance.[3]

The Connecticut decision held the statutory language evidenced a legislative intent to punish defendants who willfully failed to attend court "to answer to a specific criminal charge."  *Garvin*, 682 A.2d at 566 (emphasis removed).  The Connecticut court noted the state's two separate bail jumping

---

[3]  *State v. Garvin*, 682 A.2d 562, 565-67 (Conn. App. Ct. 1996), *aff'd,* 699 A.2d 921 (Conn. 1997).

statutes, one felony and one misdemeanor, as further evidence the legislature did not intend to merely punish the act of failing to appear. Had that been the intent, the Connecticut court reasoned there would be no need to promulgate two separate statutes with separate penalties for felony and misdemeanor bail jumping. *Id.*

The Court of Appeals was persuaded by the Connecticut decision and likewise concluded, based on Kentucky also having separate felony and misdemeanor bail jumping statutes,[4] that the General Assembly plainly intended the unit of prosecution for bail jumping to be "each specific charge for which a defendant fails to appear, not the mere failure to appear itself." *Blair*, 2023 WL 3767202, at *4. It also cited the Legislature's use of the singular term "a charge," as opposed to plural terms such as "one or more charges," as supportive of its conclusion. Therefore, the Court of Appeals concluded no double jeopardy violation had occurred and affirmed Blair's multiple convictions.

The majority today affirms the Court of Appeals, ostensibly on grounds of statutory construction, but not inconsequentially, bases much of its decision on administrative concerns relative to scheduling decisions. However, in my view, the majority and Court of Appeals have incorrectly construed the plain statutory language and have opened the door to prosecutorial charging or

---

[4] The misdemeanor offense of bail jumping in the second degree is set forth in KRS 520.080 and is nearly identical to KRS 520.070, with only the phrase "in connection with a charge of having committed a felony" in the latter being replaced by "in connection with a charge of having committed a misdemeanor" in the former.

11

docketing stratagems or machinations designed to overcome a defendant's fundamental rights regarding double jeopardy and duplicitous punishments.

The federal and state prohibitions against double jeopardy are coextensive. The Fifth Amendment to the United States Constitution and Section Thirteen of the Kentucky Constitution prohibit a person from being twice punished or twice convicted for the same offense. It is inherent in the double jeopardy prohibition that the multiple convictions must arise from the same act. "The question of when an act or series of acts constitute a single offense or multiple offenses is not new or novel[.]" *Hennemeyer v. Commonwealth*, 580 S.W.2d 211, 214 (Ky. 1979). When a defendant is convicted of violating one statute multiple times, this Court must determine the unit of prosecution intended by the legislature to ensure each conviction passes constitutional muster.

"[W]e recognize that the legislature makes the laws, deciding what is a crime and the amount of punishment to impose for violations thereof." *Jones v. Commonwealth*, 319 S.W.3d 295, 299 (Ky. 2010) (citation omitted). "The General Assembly enjoys plenary authority to establish criminal penalties within constitutional bounds." *Rushin v. Commonwealth*, 701 S.W.3d 293, 303 (Ky. 2024) (Nickell, J., dissenting) (citing *Jones*, 319 S.W.3d at 299).

Principles of statutory construction are at the forefront of this case. This Court reviews questions of statutory construction de novo, and we grant no deference to the lower courts. *Louisville & Jefferson Cty. Metro. Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 535 (Ky. 2007).

12

When interpreting statutes, this Court understands the words used in their plain and ordinary meaning. *Westerfield v. Ward*, 599 S.W.3d 738, 747 (Ky. 2019). "Our goal in statutory interpretation is to carry out the intent of the legislature." *Bloyer v. Commonwealth*, 647 S.W.3d 219, 224 (Ky. 2022). We resort to canons of construction or other extrinsic evidence of legislative intent "[o]nly if the statute is ambiguous or otherwise frustrates a plain reading[.]" *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). It must further be presumed that "the General Assembly intended neither an absurd nor an unconstitutional statute." *A.H. v. Louisville Metro Gov't*, 612 S.W.3d 902, 908 (Ky. 2020).

Under the former KRS 432.361, entitled "Failure to appear on bail bond," both felony and misdemeanor bail jumping offenses were separately addressed in a single statute, with the delineated punishment for each being based on the seriousness of the underlying criminal charge.[5] Current bail jumping offenses,

---

[5] Former KRS 432.361 read:

(1) Any person charged with a felony who is released from custody under bail, recognizance or a conditional release and who willfully fails to appear before the court granting such release when legally required or to surrender himself within three days thereafter, shall be guilty of a felony and, upon conviction shall be sentenced to imprisonment for not less than one year nor more than ten years.

(2) Any person charged with a misdemeanor, conviction of which would carry a sentence of confinement in the county jail, who is released from custody under bail, recognizance or a conditional release and who willfully fails to appear before the court granting such release when legally required or to surrender himself within three days thereafter, shall be guilty of a misdemeanor and, upon conviction shall be sentenced to confinement in the county jail for not more than twelve months.

however, are creatures of the 1974 regular session of the Kentucky General Assembly which replaced the former KRS 432.361. The Penal Code became effective as of January 1, 1975. In the fifty years since its enactment, no amendments or modifications have been made to the original statutory language.

Under the current statutory scheme, felony and misdemeanor bail jumping offenses, along with their respective authorized punishments, are delineated in two separate statutes, but with each retaining the same underlying offense-based dichotomy as set forth in the former singular statute. For this reason, the majority's emphasis and reliance on the existence of two separate statutes as evidence of a redirected legislative intent is misplaced. Instead, a plain reading of the statute reveals the gravamen of the bail jumping offense is the intentional failure to appear at a specified time and place, and not the number of separate offenses or cases which are pending and scheduled for disposition on that singular occasion.

This conclusion finds support from the official Kentucky Crime Commission/LRC Commentary to KRS 520.070 which clarifies the statute is "designed to compel a defendant's attendance following his conditional release from custody" and is not limited to punishing only those defendants who have been released on bail bond and subsequently absent themselves from a mandatory court appearance. The Commentary further specifies that when the defendant intentionally fails to appear as directed, "[t]he seriousness of the offense is based on whether the actor is charged with a felony or

misdemeanor." *Id.* Thus, contrary to the conclusion of the majority and the Court of Appeals, and the position urged by the Commonwealth, the statutory phrase "in connection with a charge" does not dictate the unit of prosecution. Rather, that phrase serves to distinguish between the class of crime, felony or misdemeanor, for which a defendant may be charged for intentionally missing a singular court date based on the seriousness of his underlying offense.

I would hold the pertinent statutory language is focused on a defendant's promise to appear at a "specified time and place" and the punishment is aimed to penalize any intentional failure to appear at that time and place. Consequently, the number of missed court appearances is the appropriate unit of prosecution for bail jumping rather than the number and diversity of charges left unaddressed.

Although Blair was released from custody under multiple bond orders, he was directed to appear regarding each on the same day, at the same time, in the same courtroom, and before the same judge. He intentionally failed to do so, thereby violating the felony provisions of KRS 520.070 and subjecting himself to the penal impositions authorized under the statute.

The clearly stated purpose of our Commonwealth's bail jumping statutes is not to "pile on" punishments for recalcitrant defendants, but rather to encourage attendance at court appearances. Recently, we clarified that

> [t]he difference between multiple, independent criminal acts and one continuous course of criminal conduct generally is "a sufficient break in the conduct and time so that the acts constituted separate and distinct offenses." *Welborn v. Commonwealth,* 157 S.W.3d 608, 612 (Ky. 2005). This break need only be "a cognizable lapse in his course of conduct during which the defendant could have reflected

15

upon his conduct, if only momentarily, and formed the intent to commit additional acts." *Kiper v. Commonwealth*, 399 S.W.3d 736, 745 (Ky. 2012).

*Johnson v. Commonwealth*, 676 S.W.3d 405, 412 (Ky. 2023).

Here, the conduct giving rise to the multiple bail jumping charges for which Blair was convicted and sentenced was his single act of intentionally failing to appear at a particular court proceeding. Though charged separately, all his underlying drug trafficking offenses had been docketed to be addressed at that singular court appearance. There was no "lapse" in his absence which would allow for multiple charges of bail jumping. There was but one contempt of the system which could be punished under the statute.[6]

The prohibited criminal conduct under the bail jumping statutes is one's intentional failure to appear at a particular court appearance, and not the redundant violation of one or more court orders relating to multiple underlying charges serving only as a predicate circumstance to the proscribed conduct. Contrary to the majority's assertions, *Paulley v. Commonwealth*, 323 S.W.3d 715 (Ky. 2010), is inapposite. Although the majority concludes *Paulley* holds that a single act can support multiple charges, a closer reading reveals the holding is not as broad as the majority suggests. Rather, it is more properly limited to the specific charges at issue there—wanton endangerment.

---

[6] Nothing in this dissent should be read to imply an intent to curtail or impair, in any way, a court's ability to punish violation of valid orders utilizing its inherent contempt powers. *See Underhill v. Murphy*, 117 Ky. 640, 78 S.W. 482, 484 (1904) ("The power of a court to punish for contempt is as old as the common law, and inherent in every court."); *Arnett v. Meade*, 462 S.W.2d 940, 947 (Ky. 1971) ("The power of the courts to punish for contempt is one of the powers inherently belonging to the judiciary.").

16

In *Paulley*, one of the co-defendants fired three shotgun blasts into a closed doorway, killing a person on the other side. Apart from a murder charge, the co-defendant was indicted on nine counts of wanton endangerment, one for each person present in the home. In upholding the charging decision and the trial court's refusal to grant a directed verdict, this Court stated "[w]e have held that Kentucky's wanton endangerment statute is designed to protect 'each and every person from each act coming within the definition of the statute. It is not a statute designed to punish a continuous course of conduct.'" *Id.* at 724 (quoting *Hennemeyer*, 580 S.W.2d at 215). Thus, based on the underlying purpose of the wanton endangerment statute, multiple charges were warranted.

But, as its name plainly indicates, one must act wantonly to be found guilty of wanton endangerment. "The offense of wanton endangerment is not dependent upon intent. As a matter of fact, we can think of no situation where intent to commit wanton endangerment would arise." *Hennemeyer*, 580 S.W.2d at 215 (internal citation omitted). "How can one intend to engage in wanton conduct? As the commentary to the Penal Code points out: 'In other words a person cannot intend to act 'wantonly' or 'recklessly' toward a result . . .' KRS 508.060 Commentary (1974)." *Thomas v. Commonwealth*, 567 S.W.2d 299, 302 (Ky. 1978) (*overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (2020)). Further, wanton endangerment is a result-based crime, meaning it is the result which is criminalized rather than an act. Thus, each

17

instance of creating a substantial danger of death or physical injury becomes the basis for a separate offense.

Conversely, KRS 520.070(1) specifically requires an intentional failure to appear in order to be found guilty of bail jumping. The legislative intent behind the statute is to encourage court appearances and it is thus an act which is criminalized, not a result. As noted earlier, Blair committed only one act by intentionally failing to appear for a single court appearance.

For these reasons, I believe the majority's reliance on *Paulley* is misplaced as that holding has no bearing on the issue squarely presented in this appeal. The strained analogy calculated to square the two distinct and incongruous cases simply defies logic, which, "like common sense, 'must not be a stranger in the house of the law.'" *Southworth v. Commonwealth*, 435 S.W.3d 32, 45 (Ky. 2014) (quoting *Cantrell v. Kentucky Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237 (Ky. 1970)).

Multiplication of Blair's singular statutory offense of failing to appear at a particular time and location into five separate offenses reflecting multiple matters scheduled to have been addressed during that singular appearance and sentences violated his constitutional right to protection against double jeopardy. In essence, he received multiple punishments under a single statute for a single act. This was plainly improper. The decision of the majority to the contrary is erroneous. Therefore, I dissent.

Keller and Thompson, JJ., joins.

COUNSEL FOR APPELLANT:

Jennifer Leigh Wade
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General

J. Grant Burdette
Assistant Attorney General