RENDERED: JANUARY 23, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0795-MR

MICHAEL KOHN                 APPELLANT


APPEAL FROM HARDIN CIRCUIT COURT
v.           HONORABLE JOHN D. SIMCOE, JUDGE
ACTION NO. 23-CR-00721


COMMONWEALTH OF KENTUCKY         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, McNEILL, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: Appellant Michael Kohn ("Kohn") was convicted at trial of first-degree fleeing or evading police, first-degree wanton endangerment, two counts of first-degree unlawful imprisonment, driving under the influence, two counts of second-degree wanton endangerment, fourth-degree assault, leaving the scene of an accident, and speeding over 26 miles per hour ("mph"). He was sentenced to ten years in prison. Kohn now appeals his conviction as a matter of

right, making the following arguments: (1) the circuit court abused its discretion by declining to apply the kidnapping exemption under Kentucky Revised Statutes ("KRS") 509.050 to his unlawful imprisonment convictions, and (2) his convictions for first-degree fleeing or evading and second-degree wanton endangerment violate double jeopardy. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 29, 2023, Kohn was driving northbound on I-65 from Nashville with his partner, Alana Reese ("Reese"), and their 12-week-old daughter, A.K. At some point during the trip, Kohn began consuming copious amounts of alcohol and driving erratically at dangerously high speeds. According to Reese's testimony, Kohn passed other vehicles using the median and maneuvered between two semi-trucks while traveling more than 100 mph. Concerned for her and her daughter's safety, Reese called 911. She remained on the line with emergency operators throughout what ultimately became a long high-speed police pursuit.

The 911 recording captures Reese repeatedly asking Kohn to stop the vehicle and let her and A.K. out. Kohn refused. Once police cruisers began their pursuit, Reese recalled Kohn saying he would refuse to stop for authorities and that they could "all die today, bitch!" Reese further recounted Kohn hitting her several times during the call.

Kohn was pursued by law enforcement for approximately 20 miles, a portion of which was through a congested construction zone. During the pursuit, Kohn weaved in traffic and used all parts of the road, including the median and graveled construction lanes. His escape attempt briefly paused on an exit ramp when Kohn struck the side of an SUV driven by Vicki Ryan ("Ryan"). Kohn's truck became momentarily stuck between Ryan's vehicle and the guardrail. While the truck was stopped, Reese attempted to exit. However, Reese was unable to safely extricate herself and A.K. in time. Despite having lost steering capacity in the collision with Ryan, Kohn nonetheless attempted to continue his evasion. Due to the damage, the ordeal soon ended as the vehicle came to a stop along a tree line near the Bullitt County Fairgrounds.

Once Kohn exited the vehicle, he was swiftly taken into custody—though not without a struggle. Officers on the scene noted that Kohn smelled strongly of alcohol, his speech was slurred, he could barely stand without assistance, and he was irate to the point of needing to be tased to be taken into custody. As noted above, a jury found Kohn guilty of multiple crimes. He was sentenced to ten years in prison and now appeals his convictions for first-degree unlawful imprisonment and second-degree wanton endangerment.

## II. STANDARD OF REVIEW

Kohn asserts two issues on appeal. First, he argues that the trial court abused its discretion by declining to apply the kidnapping exemption to his unlawful imprisonment convictions. KRS 509.050. Second, he asserts that his convictions for first-degree fleeing or evading and second-degree wanton endangerment violate double jeopardy.

During the trial, Kohn's counsel moved for a directed verdict based on the kidnapping exemption, which the court denied. Application of the exemption is determined on a case-by-case basis. *Murphy v. Commonwealth*, 50 S.W.3d 173, 180 (Ky. 2001). The exemption is to be strictly construed, and the burden is on the defendant to show that it should apply. *Id.* In the absence of any abuse of discretion, the trial court's decision will not be disturbed. *Id.; see also Arnold v. Commonwealth*, 192 S.W.3d 420, 426 (Ky. 2006). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

As to the second issue, Kohn acknowledges it was not preserved.[1] However, a double jeopardy violation may be reviewed on appeal regardless of a

---

[1] Further, to the extent Kohn's brief and reply argue that there was insufficient evidence for the jury to convict him of unlawfully imprisoning Reese and A.K., that issue was also unpreserved and will not be addressed.

failure to raise it in the trial court. *Baker v. Commonwealth*, 922 S.W.2d 371 (Ky. 1996), *overruled on other grounds by Dixon v. Commonwealth*, 263 S.W.3d 583 (Ky. 2008). In such cases, which invoke a palpable error analysis, there will be no reversal "absent a finding of manifest injustice." *Sexton v. Commonwealth*, 647 S.W.3d 227, 232 (Ky. 2022). "An error results in manifest injustice if it 'so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable.'" *Behrens v. Commonwealth*, 677 S.W.3d 424, 432 (Ky. 2023) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)).

### III. ANALYSIS

**A. The Trial Court Did Not Abuse Its Discretion in Declining to Apply the Kidnapping Exemption**.

Pursuant to KRS 509.050,[2] a conviction for kidnapping or unlawful imprisonment may be barred in certain circumstances. The Kentucky Supreme court has supplied a three-prong test for the application of the exemption. Only if all three elements of the following test are satisfied, will the exemption apply:

> [(1)] The underlying criminal purpose must be the commission of a crime defined outside of KRS 509[;]
>
> [(2)] The interference with the victim's liberty must have occurred immediately with or incidental to the commission of the underlying crime[; and]

---

[2] KRS 509.050 is commonly referred to as the kidnapping exemption.

> [(3)] The interference with the victim's liberty must not exceed that which is ordinarily incident to the commission of the underlying crime.

*Hatfield v. Commonwealth*, 250 S.W. 3d 590, 599 (Ky. 2008); *see also Griffin v. Commonwealth*, 576 S.W.2d 514, 516 (Ky. 1978). The trial court, not the jury, determines whether the exemption applies. *Duncan v. Commonwealth*, 322 S.W.3d 81, 94 (Ky. 2010); *see also Calloway v. Commonwealth*, 550 S.W.2d 501, 503 (Ky. 1977).

The purpose of the exemption is to prevent the Commonwealth from misusing the kidnapping and unlawful imprisonment statutes to secure greater punitive sanctions for "rape, robbery, and other offenses when the crime itself inherently involves restraint done to accomplish the crime (for example, holding a victim to cut his throat)." *Stinnett v. Commonwealth.*, 364 S.W.3d 70, 76 (Ky. 2011). Thus, for an underlying crime to be subsumed into a kidnapping charge, that crime must be carried out in a manner that involves the physical restraint of a victim or a restriction on a victim's liberty. *Id.*

Driving under the influence in no way requires the restraint of a separate person to commit the crime. Similarly, the crime of fleeing or evading law enforcement does not *require* one to impinge on the liberty of another, as was done here. Put simply, Kohn's underlying crimes are not the sort of offenses contemplated by the legislature's enactment of the KRS 509.050 exemption

because they are not associated with restricting one's liberty. Not surprisingly, our caselaw, as noted above, has not applied the kidnapping exemption to crimes of this type, and Kohn cites no cases with holdings aligned with his position. Indeed, although unnecessary for the commission of his crimes, Kohn's restraint of Reese and their infant daughter while evading police and driving drunk made his actions substantially more egregious – by heightening the danger to innocent parties. There is no reason to believe the crafters of the exemption contemplated its use to immunize kidnapping acts committed during the commission of other separate and distinct crimes.

Thus, the trial court did not abuse its discretion in overruling the motion for directed verdict on the charge of unlawful imprisonment pursuant to KRS 509.050.

**B. No Reversal on Double Jeopardy on Double Jeopardy Grounds**

"No person shall, for the same offense, be twice put in jeopardy of his life or limb . . . ." KY. CONST. Sec. 13; *accord* U.S. Const. amend. V. "[T]he Kentucky double jeopardy provision is identical in [its] import with its federal counterpart." *McNeil v. Commonwealth*, 468 S.W.3d 858, 866 (Ky. 2015) (quoting *Jordan v. Commonwealth*, 703 S.W.2d 870, 872 (Ky. 1985)) (internal quotation marks omitted). Moreover, while the double jeopardy provision generally shields a defendant from a second prosecution following either a

conviction or acquittal on the same conduct, "it also prohibits multiple punishments for the *same offense*." *Id.* (emphasis added).

With respect to multiple punishments, though, the double jeopardy clause's impact is limited, "do[ing] no more than prevent[ing] the sentencing court from prescribing greater punishment than the legislature intended." *Id.* (quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983)). Thus, "[a] court's [first] task, . . . when determining the permissibility of imposing multiple punishments for a single transaction or course of conduct is simply to determine the legislature's intent." *Id.* at 867.

Often, though, "when a defendant's acts violate more than one criminal provision, the implicated statutes will not make clear whether and to what extent multiple punishments are intended." *Id.* In those scenarios, the well-known *Blockburger* rule applies. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

> [W]here the same act or transaction constitutes a violation of two [or more] distinct statutory provisions, the test to be applied to determine whether there are two [or more] offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* As the Kentucky Supreme Court has recognized, however, if the General Assembly's intent is clear, that intent controls without resort to *Blockburger*

analysis. *McNeil*, 468 S.W.3d at 867 (citing *Lloyd v. Commonwealth*, 324 S.W.3d 384 (Ky. 2010)).

In KRS 505.020, the General Assembly codified *Blockburger*'s analysis on multiple offenses, arising from a single course of conduct. *See Clark v. Commonwealth*, 267 S.W.3d 668, 675 (Ky. 2008). The general rule is straightforward, "[w]hen a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense." KRS 505.020(1). The legislature carved out three exceptions: (1) for "included" offenses, KRS 505.020(1)(a); (2) for offenses requiring inconsistent findings of fact, KRS 505.020(1)(b); and (3) for offenses designed to prohibit a continuing course of conduct where only an uninterrupted course of that conduct is alleged, KRS 505.020(1)(c).

We begin our analysis by noting that our Supreme Court has previously examined the legislature's intent regarding wanton endangerment in the context of double jeopardy and multiple offenses. *See Hennemeyer v. Commonwealth*, 580 S.W.2d 211 (Ky. 1979). In *Hennemeyer*, a defendant in a vehicle fired multiple gunshots at pursuing police officers over the span of a fifteen-minute chase. *Id.* at 213. At trial, the Commonwealth charged each of the separate shots fired during the pursuit as a separate count of wanton endangerment. *Id.* at 212. The circuit court denied the defendant's motion to merge the counts,

and our Supreme Court affirmed, reasoning that the newly enacted wanton endangerment law[3] was "not a statute designed to punish a continuous course of conduct[,]" but instead "designed to protect each and every person from each act coming within the definition of the statute." *Id.* at 215.

Here, Kohn seeks relief along slightly different grounds, asserting that his two convictions for second-degree wanton endangerment constitute double jeopardy because the elements of those offenses require no proof beyond what was required for first-degree fleeing or evading conviction. Kohn relies solely on the police pursuit scenario found in *Brown v. Commonwealth*, 297 S.W.3d 557 (Ky. 2009), arguing that its comparable circumstances mandate that his second-degree wanton endangerment convictions be vacated. We disagree.

In *Brown*, a perpetrator led several police officers on a high-speed car chase to circumvent a sobriety checkpoint. 297 S.W.3d at 559. Among other things, Brown was convicted at a jury trial of two second-degree wanton endangerment charges. *Id.* at 562. These offenses involved the endangerment of two specific officers through their *direct* participation in pursuing Brown as he fled and evaded at high speeds. *Id.* at 559-60. Finding that the elements of Brown's second-degree wanton endangerment charges were included in his first-degree

---

[3] The *Hennemeyer* opinion, issued in 1979, analyzed the wanton endangerment statute that had become effective January 1, 1975. *Hennemeyer*, 580 S.W.2d at 214.

-10-

fleeing and evading count, our Supreme Court found it appropriate, under the *Blockburger* analysis, to dismiss Brown's two misdemeanor wanton endangerment convictions. *Id.* at 562-63.

The analysis in *Brown*, though necessarily limited by its facts, lacked any discussion about whether a police evader's endangerment of a bystander during a chase could constitute a distinct criminal act. Especially when viewed through a legislative intent lens, as examined in *Hennemeyer*, we believe the introduction of a separate endangered victim (Ryan) – who was not part of the pursuing police – distinguishes the facts here from Brown's. Just as the legislature's intent through wanton endangerment was to "protect each and every person" from a perpetrator's perilous acts, it could not have meant for the risk forced on Ryan by Kohn to be merged with the criminality of his more general fleeing and evading. As we have noted before, the exceptions found in KRS 505.020(1)(a)-(c) do not apply "when the same course of conduct victimize[ed] two different individuals." *Smith v. Commonwealth*, No. 2019-CR-000223-MR, 2020 WL 4723019, at *3 (Ky. App. Aug. 14, 2020); *see also Parks v. Indiana*, 489 N.E.2d 515, 516 (Ind. 1986) (finding double jeopardy not impacted by criminal acts against separate victims); *Spradling v. Texas*, 773 S.W.2d 553, 556-57 (Tex. Crim. App. 1989) (*en banc*) (double jeopardy protections inapplicable to a multiple

victim offense when legislative intent is to protect all victims).[4]  Accordingly, we find that double jeopardy protections and KRS 505.020 do not preclude the second-degree wanton endangerment conviction associated with Ryan.

The remaining contested misdemeanor wanton endangerment conviction – associated with Kentucky State Police ("KSP") Lieutenant Riley – is distinguished differently.  Lt. Riley was the KSP Supervisor on duty the night of Kohn's criminal escapade.  He testified at trial about driving faster than 125 miles per hour in an attempt to catch up to the ongoing pursuit of Kohn by KSP Trooper Nichols.  While Lt. Riley's law enforcement role makes his scenario somewhat analogous to the facts in *Brown*, there is a difference.  In *Brown*, the two second-degree wanton endangerment charges – vacated for being included within Brown's felony fleeing and evading conviction – involved officers who *directly* participated in the chase, putting them within close physical proximity of Brown's dangerous driving.  Here, the record indicates that the endangerment was not caused by Kohn's reckless driving within Lt. Riley's immediate vicinity, but by Lt. Riley's obligation to speed through traffic himself on his way to reach the ongoing pursuit.[5]  This factual distinction causes us to reach the same result found in *Turner*

---

[4] While none of these cases is binding on us, we find their analysis on this question persuasive.

[5] The record appears to indicate Lt. Riley did not reach Kohn until the pursuit had ended near the Bullitt County fairgrounds.

*v. Commonwealth*, which although not binding on us, is persuasive. *See Turner v. Commonwealth*, No. 2016-CA-001443-MR, 2017 WL 5508759, at \*2 (Ky. App. Nov. 17, 2017) (finding double jeopardy not implicated when a different set of facts supported each charge). Given the unpreserved status of this issue and the ultimate sentence rendered on Kohn, we cannot say that the trial court's actions resulted in a shocking or jurisprudentially intolerable outcome.

## IV. CONCLUSION

For the forgoing reasons, we AFFIRM the judgment of conviction by the Hardin Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky